Joseph **MORRIS** et al.,
**Plaintiffs-Appellees,**

v.

Anthony **TRAVISONO,**
**Defendant-Appellant.**

No. 74–1127.

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1975.

Decided Feb. 6, 1975.

W. Slater Allen, Jr., Asst. Atty. Gen., with whom Richard J. Israel, Atty. Gen., was on brief, for appellant.

Cary J. Coen, Providence, R. I., with whom Winograd, Shine & Zacks, John M. Roney, Providence, R. I., Ralph J. Gonnella and Stanley A. Bass, New York City, were on brief, for appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from an order of the district court[1] enjoining Rhode Island officials from suspending Regulations Governing Disciplinary and Classification Procedures at the Adult Correctional Institutions (Morris Rules), which had been incorporated in a judgment entered by the district court on April 20, 1972.

The Morris Rules were the outgrowth of proceedings in the district court brought by inmates of the Adult Correctional Institutions (ACI) against Rhode Island prison authorities in a class action instituted on October 11, 1969, for alleged violations of the eighth and fourteenth amendments of the Constitution. As a result of negotiations, overseen by the court, the parties agreed to a detailed set of procedures for disciplining and classifying prisoners. The court approved the procedures and incorporated them in an interim consent decree, retaining jurisdiction for eighteen months to allow the parties to establish a final working scheme of enforcement of the procedures. Morris v. Travisono, 310 F.Supp. 857, 862 (D.R.I.1970). The parties did reach an agreement, and on April 20, 1972, the district court entered a judgment as a final consent decree establishing the Morris Rules as "those minimum procedural safeguards" to which the plaintiff class was entitled. The judgment further declared that defendant officials agreed to promulgate the rules pursuant to the Rhode Island Administrative Procedures Act, R.I.Gen. Laws § 42–35–1 et seq., within ninety days of the judgment. No injunctive relief was added to the declaration in the final decree.

The Morris Rules were duly promulgated under state law on October 10, 1972, but had a short life. On June 22, 1973, after a corrections officer at ACI was killed by an inmate, the Rhode Island Director of Public Welfare directed the Secretary of State to suspend the Morris Rules until further notice. During the preceding eleven weeks a number of events had occurred, including an extensive riot on April 2, the appointment of a new warden, the stabbing to death of an inmate, the discovery of an escape plot, and assaults on inmates and guards. Shortly after suspension of the Morris Rules seventeen inmates, previously suspected of involvement in the disturbances and escape plan, were moved from normal status to segregated confinement in the Behavioral Correction Unit in the maximum security area without notice or a hearing. A majority of those inmates were still in confinement on December 10, 1973, at which time the district court heard plaintiffs' motion for an injunction. The Morris Rules remained suspended then, and at no time previously had defendants filed any motion with the district court to modify or vacate the court's judgment of April 20, 1972.[2]

---

1. The case was a consolidated action in which plaintiffs were a class consisting of all inmates at the Rhode Island Adult Correctional Institutions. Defendants were the Rhode Island Commissioner of Public Welfare and Rhode Island prison authorities, who were added as defendants after an amended complaint was filed.

.2. On March 25, 1974, shortly after the district court's decision in this case, defendant officials filed a motion to modify the April 20,

The district court, in granting a permanent injunction against suspension of the Morris Rules, found that defendants had deliberately not reinstituted the Morris Rules or provided inmates with due process rights after July 5, 1973, when a state of emergency no longer existed at ACI. 373 F.Supp. 177, 180 (D.R.I.1974). The court noted that the warden, in justifying the suspension of the Morris Rules, had testified that he was advised that hearings might prejudice the criminal cases being investigated against the inmates charged with serious violations; that hearings were "unworkable", leading to fights among guards, inmates, and witnesses; that the emergency provisions of the Morris Rules were unacceptable because the temporary reassignment of an inmate would have to be reviewed eventually;[3] and generally that compliance with the Morris Rules was a "hassle all the way". Though the ACI remained understaffed, tense, and in physical disrepair, the court found that order and safety had been restored by July 5, 1974, so that the procedural safeguards under the Morris Rules could have been provided. In light of these circumstances, the court concluded that defendants' statements that due process protections were currently being provided were insufficient assurance against repetition of the wrongful suspension of rights. The court made clear, however, that it is open to consideration of proposed modifications to the Morris Rules that are consistent with constitutional requirements.

 It is important to note, first of all, that the warden's responsibility and authority to take immediate steps thought necessary to maintain prison safety and order were not questioned by the district court. The district court recognized that exigent circumstances could

justify the temporary suspension, prior to disciplinary action, of due process hearing procedures. 373 F.Supp. at 181. *See* Gomes v. Travisono, 490 F.2d 1209, 1215 & nn. 9–10 (1st Cir. 1973), vacated and remanded, 418 U.S. 909, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974), aff'd in pertinent part, 510 F.2d 537 (1st Cir. 1974); Hoitt v. Vitek, 497 F.2d 598 (1st Cir. 1974). However, after an emergency has ended, due process safeguards must be provided as soon as possible. This court has stated:

> " '[E]mergencies . . . cease to be emergencies when they continue indefinitely and inmates cannot be kept confined to their cells indefinitely in alleged violation of their constitutional rights merely on the assertion of the Warden that prison security requires it.' The unreviewable discretion of prison authorities in what they deem to be an emergency is not open-ended or time unlimited."

Hoitt v. Vitek, *supra* at 600. In the present case, there is clear evidence that state authorities went well beyond an emergency suspension of *Morris* procedures dictated by exigent circumstances. Rather they simply determined, on their own initiative, to scrap the Rules and, in effect, to disregard the obligations imposed by the consent decree. Moreover, from the failure of state authorities to seek relief from the consent decree through legal channels, the court was entitled to conclude that the state's approach was so unpredictable as to require issuance of an injunction.

Under the "Emergency or Temporary Provisions" of the Morris Rules inmate rights may be postponed for a week at most. *See* note 1 *supra*. As the situation developed in Rhode Island, a week might well have been too little. Certainly we do not suggest that in a situation

---

1972, judgment by substituting proposed revised rules for the Morris Rules. At the request of defendant officials, action on the motion has been deferred so that the parties can attempt to resolve the matter by consent.

**3.** The emergency provisions of the Morris Rules provide in part:

"All temporary assignments shall be reviewed at the next regular meeting of the Classification Board, which in any case will not exceed one week, and final action by the Board will be ordered without unnecessary delay."

of escalating violence, prison authorities were required to follow unworkable procedures. But the Morris Rules were totally suspended for about five months—until a motion was brought by plaintiffs in the district court. During this time defendants sought no modification[4] of the district court's judgment of April 20, 1972. We find no clear error in the district court's view that a state of emergency no longer existed after July 5, 1973—two weeks after suspension of the Morris Rules. By that time visitation rights were restored, and shortly thereafter the general lockup of the inmates in the maximum security area was ended. And even if the acute emergency lasted beyond two weeks, we find inexplicable defendants' failure to approach the court in an effort to explain their difficulties and to secure an adjudication of their continuing obligations.

Testimony indicates that the warden suspended the rules in part because he viewed them as unworkable, unacceptable, and bothersome. We do not necessarily condemn him for so feeling, especially if his experience led him sincerely to that view, although it seems clear that prison officials will have to live with procedural requirements foreign to earlier experience. *See* Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Courts are not infallible, and it may take some trial and error before rules are written which establish the best possible balance between an inmate's rights and the needs of prison security. Where the state officials erred was in failing to accord proper deference to the judicial decree. Distaste for the Rules did not allow defendants simply to disregard the court's judgment of April 20, 1972, and the fourteenth amendment rights declared under that judgment. *See* 28 U.S.C. § 2201. To the

extent the Rules seemed unduly burdensome, the state had to seek their modification by legal means. Had it done so, using diligence reasonable under the circumstances, this case would be in a different posture.

■ By way of explaining their failure to seek relief from the Morris Rules in the district court, defendants contend that the consent decree directed them to follow state law under the Rhode Island Administrative Procedures Act in modifying the Morris Rules. Under section 42–35–3(b) of the Act, a state agency finding "an imminent peril to the public health, safety or welfare" may adopt without notice an emergency rule for 120 days, renewable for 90 days. While the consent decree called for enforcement of the Morris Rules under state law, *see* Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974), the contention that the Morris Rules themselves may be eliminated under state law is without merit. The contention overlooks the nature of the original proceedings—a civil rights action under 42 U.S.C. § 1983—as well as the clear import of the words in the consent decree. The Morris Rules, including the emergency provisions, embodied a binding declaration of constitutional rights and were part of a judgment; the court's final decree specifically says as much. If the decree appeared unintelligible, access to the court was available for clarification. Defendants cannot unilaterally order the elimination of rights determined in federal courts simply because the consent decree was to be enforced through state machinery.

■ Defendants argue that in any event a permanent injunction is unnecessary now because on November 26, 1973, the state promulgated new rules of procedural due process under the Rhode Is-

---

4. Rule 60(b), Fed.R.Civ.P., provides in part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

land Administrative Procedures Act. The district court reserved ruling on the adequacy of these revised rules as a substitute for the Morris Rules in providing due process safeguards. However, the court found that defendants' violation of the Morris Rules and the continued violation of due process rights after promulgation of the new rules made the issuance of an injunction appropriate. 373 F.Supp. at 180–181, 185.

The district court acted within its power and did not err in concluding that injunctive relief was necessary and proper to enforce its declaratory judgment and decree of April 20, 1972. 28 U.S.C. § 2202.[5] It is true that the Morris Rules were adopted at a time before the Supreme Court had clarified the scope of an inmate's procedural due process rights. *See* Wolff v. McDonnell, *supra.* Prison officials must not be locked into restrictions on their ability to make a wide range of decisions not of constitutional dimension. *See generally* Gomes v. Travisono, *supra.* But access to the district court has been, and remains, available to a party seeking to establish what in the Morris Rules is now constitutionally necessary and what is not. In an addendum to its opinion in this case, the district court recognized that not all changes in the Morris Rules should require its approval and expressed its intention to promulgate, with the help of the parties, a procedural guideline by which prison officials may change the Morris Rules without first seeking the sanction of the district court. We have no doubt that the district court will continue to give sensitive and reasonable attention to legitimate problems raised by prison officials, and its judgments are of course subject to judicial review. But state officials may not unilaterally disregard its judgments.

The order of the district court is affirmed.

---

**5.** "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse parties where rights have been determined by such judgment." 28 U.S.C. § 2202.