Eliconis **HECHAVARRIA**

v.

Stafford S. **QUICK**, et al.

Civ. A. No. 86–593 L.

United States District Court,
D. Rhode Island,
First Division.

Sept. 29, 1987.

Eliconis Hechavarria, pro se.

Anthony Cipriano, Legal Counsel, Dept. of Corrections, Cranston, R.I., for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter concerns the issue of whether certain notice and classification provisions of the Morris Rules, in effect in the Rhode Island Department of Corrections, endow prisoners with a right to liberty under the Fourteenth Amendment to the Constitution of the United States. The sequence of events culminating in this issue is as follows.

Some time prior to October of 1983, Eliconis Hechavarria was sentenced to serve a ten year prison term by a Judge of the Rhode Island Superior Court. Then, in October of that year, Hechavarria was transferred from the Rhode Island Adult Correctional Institution (A.C.I.) to the Connecticut State Prison at Somers to serve his sentence in accordance with the New England Inter-State Compact. Hechavarria stayed at the Somers prison until January 25, 1985, when he alleges his job officer called him from his work assignment and gave him a pass to go to the Captain's Office.

Upon entering the "Captian's Offices," Hechavarria claims the "Captian" informed him that he was being returned to the Rhode Island Department of Corrections. Plaintiff contends that the Captian, at no time, stated why "he was being transferred back to Rhode Island" or lodged any charges against plaintiff. Hechavarria, then, states that he was placed into a segregation unit at Somers for three to four hours until Rhode Island marshals picked him up and returned him to the A.C.I.

Upon his return to the Rhode Island prison, Hechavarria alleges he was placed in the "back room of the Hospital at High Security, for two weeks." During this time, he claims that he "was not afforded any outside exercise or sunlight and that, as a result, he became disoriented as to the time of day."

After spending approximately two weeks in the Hospital, plaintiff states he was "transferred to F–Module, a segregation unit." Then, some time in February a week to one and one-half weeks later, plaintiff was taken before a Classification Board. Plaintiff alleges that the only person present that he could identify at this hearing was Maggie Picot, Counselor. Ms. Picot, plaintiff claims, explained to him "that he was being downgraded to 'C' status for suspicion of being involved in drugs at Somers, Connecticut." In addition, plaintiff alleges, Ms. Picot told him that his alleged involvement with drugs was also "the reason why plaintiff was [being] returned to the State of Rhode Island Department of Corrections."

As a result of these alleged occurrences, Hechavarria filed a complaint in this Court pro se. Defendant, Stafford S. Quick, former Associate Director of the High Security Center at the A.C.I. moved to dismiss plaintiff's complaint pursuant to Fed.R. Civ.P. 12(b)(6).

The matter was subsequently referred to the Magistrate who recommended to the Court that dismissal be granted. The Magistrate's reasoning was twofold. First, that Hechavarria's segregation after his retransfer to the Rhode Island prison system was not of such nature as to trigger application of the cruel and unusual punishment clause of the Eighth and Fourteenth

Amendments to the United States Constitution. Secondly, prison officials did not violate plaintiff's procedural due process rights under the Fourteenth Amendment when they downgraded him to C status because plaintiff did not have a constitutional right to a particular classification.

Plaintiff objected to the Magistrate's Report and Recommendation, insisting that the Department of Corrections' own guidelines—the Morris Rules—bestow upon inmates a substantive liberty interest under the Fourteenth Amendment to the United States Constitution. In addition to this objection, plaintiff moved the Court to appoint counsel to represent him under 28 U.S.C. § 1915(d).

 The Court fully agrees with the Magistrate's Report and Recommendation on the two issues specifically raised by plaintiff's complaint. It is uniformly agreed that inmates do not have a liberty interest in a particular classification directly under the due process clause of the Fourteenth Amendment. *Parenti v. Ponte*, 727 F.2d 21, 23 (1st Cir.1984). Moreover, it is also clear that the two weeks of "isolation type confinement" incurred in this case was not in and of itself sufficient to raise Eighth Amendment concerns. See *Jackson v. Meachum*, 699 F.2d 578, 582 (1st Cir.1983), where solitary confinement for nine months did not violate the cruel and unusual punishment clause. These claims alleged by plaintiff, therefore, cannot form the basis for a cause of action under 42 U.S.C. § 1983.

 There is, however, a third basis for a cause of action under § 1983 which might be applicable here. While not apparent from the face of the complaint, plaintiff's Objection to the Magistrate's Report and Recommendation makes clear that he protests the Department of Corrections' alleged violation of Morris Rules B and C(3) of the section entitled "Classification Procedures." *Morris v. Travisono*, 499 F.Supp. 149, 166–67 (D.R.I.1980); *see also Morris v. Travisono*, 310 F.Supp. 857, 870 (D.R.I.1970). Under the "less stringent standards" to be accorded *pro se* complaints upon motions to dismiss, *Haines v.*

*Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–97, 30 L.Ed.2d 652, *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972), the Court is required to examine the legal foundation for these allegations as well.

Rhode Island's rules governing the regulation of the ACI (the Morris Rules) were adopted in settlement of civil rights litigation brought in this Court in the early 1970's. The section of these rules entitled "Classification Procedures" contains the following two subsections pertinent to this litigation:

B. Notice

In cases where any downgrading of classification grade is to be considered, an inmate shall receive timely written notice.

C. The Classification Meeting

3. No misconduct shall be considered by the Classification Board unless the Disciplinary Board has made a finding unfavorable to the inmate.

Plaintiff contends that these two regulations invest him with a substantive liberty interest under the due process clause of the Fourteenth Amendment. A review of the case law in this area leads to the conclusion that plaintiff is in error.

In the case of *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the United States Supreme Court set the standard for determining whether state-made prison guidelines were embraced by the due process clause of the Fourteenth Amendment. In *Hewitt*, plaintiff filed an action in the Middle District of Pennsylvania alleging that an administrative segregation pursuant to Title 37 Pa.Code § 95.104(b)(1) and (3) violated his due process rights under the Fourteenth Amendment. *Id.* at 462, 103 S.Ct. at 866–67.

Sub-section (b)(1) provided that an inmate could be placed in Close or Administrative Custody upon the approval of the officer in charge "not routinely, but based upon his assessment of the situation and the need for control." *Hewitt*, 459 U.S. at 470 n. 6, 103 S.Ct. at 871 n. 6. Subsection (b)(3) provided that an inmate could be temporari-

ly confined to "Close or Maximum Administrative Custody in an investigative status" where it has been determined that there is a "threat of a serious disturbance," or "serious threat to the individual or others." *Id.* at 470–71, 103 S.Ct. at 870–71. Finally, subsection (b)(3) required that the inmate "shall be notified" in writing as soon as possible that he is under investigation and that he "will receive" a hearing if any disciplinary action is being considered after the investigation is completed. *Id.*

In deciding whether the plaintiff possessed a constitutionally protected interest, the Court stated that the mere fact that Pennsylvania created a "careful procedural structure regulating administrative segregation" does not necessarily indicate the existence of a protected liberty interest.

> The creation of procedural guidelines to channel the decision-making of prison officials is, in the view of many experts in the field, a salutary development. It would be ironic to hold that when a State embarks on such desirable experimentation, it thereby opens the door to scrutiny by the federal courts, while States that choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause. The adoption of such procedural guidelines, without more, suggests that it is these restrictions alone and not those federal courts might also impose under the Fourteenth Amendment, that the State chose to require.

*Id.* at 471, 103 S.Ct. at 871.

Despite this declaration, the Court went on to hold that the Pennsylvania statute did create a protected liberty interest under the United States Constitution. This conclusion, the Court reasoned, was demanded by the presence of two indicia: (1) "the Administrative segregation *will not occur absent specified substantive* predicates _____ vis., 'the need for control' or 'the threat of serious disturbance.' " (2) use of language of an unmistakably mandatory character requiring certain *procedures* "shall," "will" or "must" be employed. *Id.* at 471–72, 103 S.Ct. at 871.

Application of these two indicia to the Morris Rules does not require a similar result. While the Morris rules in question do use mandatory language (the word "shall") in connection with their procedural strictures, they do not contain any specific substantive predicates which indicate that Rhode Island has endowed inmates with a liberty right to a particular classification.

Rule B provides that an inmate shall receive timely written notice of the subject and purpose of a classification meeting. This rule is purely procedural in nature. It does not state that an inmate has a vested right to a particular prison status. Nor as in *Hewitt* does it affirmatively grant the prisoner a classification or condition a change of status upon the happening of certain events such as "the threat of serious disturbance". Rather, the rule merely states a procedure (notice) which prison officials should follow in reclassifying inmates. Without containing either an affirmative grant or predicates indicative of such a grant, the rule cannot be said to confer upon inmates of the Rhode Island prison system a right to liberty under the Fourteenth Amendment to the United States Constitution.

█ The same can be said of Rule C(3). This rule provides that no misconduct shall be considered by the Classification Board unless the Disciplinary Board has made a finding unfavorable to the inmate. Once again, this rule neither affirmatively endows an inmate with a particular prison status nor does it contain substantive predicates indicative that the state has made such a grant. Rather, the rule only establishes the manner in which the various administrative bodies should review an inmate's case. Like Rule IIIB, this rule also fails to contain a right to liberty under our federal Constitution.

*Parenti v. Ponte,* 727 F.2d 21 (1st Cir. 1984) and *Santiago v. Garcia,* 821 F.2d 822 (1st Cir.1987) are not to the contrary. In both those cases, the rules in question were not purely procedural in nature, unconnected to an express grant of liberty or predicates to such a grant. Those cases, then,

are far more closely aligned with *Hewitt* than with the present case.

In *Parenti*, 727 F.2d at 24, Massachusetts prison regulations stated that inmates could be transferred to a departmental segregation unit (DSU) after a finding by the commissioner that the record of the resident indicated: (a) The resident poses a substantial threat to the safety of others; (b) The resident poses a substantial threat of damaging or destroying property or (c) The resident poses a substantial threat of interrupting the operation of the state correctional facility if he is confined in the general population.

While this regulation appeared to allow discretionary transfers, it was the presence of the three predicates, along with the mandatory nature of certain procedural requirements which allowed the Court to infer that prisoners possessed a vested interest in a particular status under the statute. *Id.* at 25. Thus, as in *Hewitt*, the Court deduced that inmates could not be transferred absent the occurrence of one or more of the predicates. *Id.*

Similarly in *Santiago*, the statutory scheme, upon initial scrutiny, seemed to grant inmates only procedural rights (the right to a hearing) prior to an inter or intra-prison status change. *Santiago*, at 825. The rule in dispute, however, carved out exceptions to this general grant by enumerating seven emergency situations in which changes could be made temporarily without a hearing, (e.g. alcohol or narcotic abuse, riot or insurrection, threats to safety of witnesses) *Id.* at 827–28. In any event, hearings had to be held within seven days after the emergency action. *Id.* at 825.

Following *Hewitt* and *Ponte*, the *Santiago* Court inferred from the presence of the predicates, along with the mandatory language contained in the seven day requirement, that the state had affirmatively granted inmates a substantive liberty interest in a particular prison status. *Id.* As in *Hewitt* and *Ponte*, prison officials could not change the status of an inmate absent the occurrence of one or more of the substantive predicates.

Unlike the statutory schemes in question in *Hewitt, Ponte* and *Santiago*, the Morris Rules in dispute create at most a "careful procedural structure" concerning the classification of prisoners. *Hewitt*, 404 U.S. at 471, 103 S.Ct. at 871. Indeed the very title of the section in which rules B and C(3) are contained is designated "Classification Procedures." The rules in question, thus, fail to contain the necessary "specified substantive predicates" which would indicate that the State of Rhode Island has affirmatively granted ACI inmates right to liberty under the Constitution of the United States.

Aside from the fundamental distinction between *Hewitt* and its First Circuit progeny and the present case, there are two other reasons why this Court refuses to raise purely procedural regulations to a constitutional level. Initially, the Morris Rules were promulgated as part of a settlement agreement to certain civil rights litigation brought before this Court in the early 1970's. *Morris v. Travisono*, 310 F.Supp. 857 (D.R.I.1970). While no doubt a "salutary development" in the field of prisoner-administrator relations, it is clear that Rhode Island was never one of those states which voluntarily embarked upon the road of this "desirable experimentation", *Hewitt*, 459 U.S. at 471, 103 S.Ct. at 871.

Indeed, the State attempted at one time to abolish the Morris Rules it had promulgated by means of a claimed power under the Administrative Procedure Act. *Morris v. Travisono*, 509 F.2d 1358, 1359 (1st Cir. 1975). Since the rules, however, were bound up with a judgment of a federal court, this attempt was declared unlawful by the First Circuit. *Id.* at 1361. The Rules were accorded by the courts, if not by the Rhode Island General Assembly, the force and effect of law. *Id.* Given the State's reluctant embracement of the Morris Rules, it is, as the *Hewitt* Court stated, "these [procedural] restrictions alone, and not those the federal courts might impose under the Fourteenth Amendment, that the State chose to require." *Hewitt*, at 471, 103 S.Ct. at 871.

The constitutionalization of state procedural rules poses a great danger of intrusion upon legitimate state legislative and executive prerogatives. The administration of the prisons is a complex and difficult undertaking, often requiring wide latitude of discretion on the part of prison officials. Were federal courts to give state procedural rules constitutional status, prison administrators would be threatened with a flood of § 1983 actions based upon purported liberty right violations. These suits, in turn, would have a paralyzing effect upon the ability of these officials to administer the prisons fairly and efficiently by raising the constant spectre of liability for damages or other judicial intervention. This is a result that is neither constitutionally mandated nor one which this Court chooses to endorse.

Having concluded that the Morris Rules in question do not endow plaintiff with a right to liberty under the Fourteenth Amendment, two conclusions immediately follow. First, plaintiff has failed to state a cause of action under 42 U.S.C. § 1983, since by the terms of that statute, in order to possess a right to judicial relief plaintiff must allege that he has been "deprived of a right, privilege or immunity secured by the Constitution of the United States...."

Secondly, it follows that without a cause of action plaintiff is not entitled to appointment of counsel under 28 U.S.C. § 1915. Even where the merits of plaintiff's claim are colorable, appointment of counsel may not be necessary. *Cookish v. Cunningham,* 787 F.2d 1, 2–3 (1st Cir. 1986) (per curiam). Certainly then, when plaintiff fails to state a cause of acton by fact pleading, appointment of counsel is superfluous.

For all the above reasons, defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6) is granted. Plaintiff's motion for appointment of counsel under 28 U.S.C. § 1915(d) is denied.

*It is so Ordered.*