George MORGAN

v.

Donald ELLERTHORPE, Stafford Quick,
David Thornton, James Yakiey, Antho-
ny Amaral, Officer Mallard.

Civ. A. No. 86–0040–T.

United States District Court,
D. Rhode Island.

Feb. 20, 1992.

George Morgan, pro se.

Anthony A. Cipriano, Deputy Chief, Legal Services, Cranston, R.I., for defendants.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This is an action brought by a state prisoner pursuant to 42 U.S.C. § 1983. It alleges that various prison officials violated his civil rights when they placed him in punitive segregation as a result of disciplinary charges brought against him. The case is presently before the Court for consideration of the prisoner's objection to a Magistrate Judge's Finding and Recommendation that the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) be granted. For reasons hereinafter stated, the motion to dismiss is granted in part but on grounds different from those cited by the Magistrate Judge.

## BACKGROUND

George Morgan is an inmate at Rhode Island's Adult Correctional Institutions (the "ACI"). The defendants are administrators and correctional officers at the ACI. The complaint identifies them as Donald Ellerthorpe, a Deputy Assistant Director of the Department of Corrections, who is described as responsible for the overall operation of the ACI and for review of all disciplinary proceedings; Stafford Quick, the Warden of the High Security Service Center (the "HSSC"); Lieutenants David Thornton and James Yakiey, who are described as correctional officers responsible for "overall operation of correctional officers of lesser grade"; Edward Young and a Mr. Mallard, both of whom are described as correctional officers assigned to the HSSC; and Anthony Amaral, who is identified as a counselor to prisoners at the ACI.

The complaint alleges that on December 10, 1985, Morgan's cell in the HSSC was searched by Young and another correctional officer named Brouelette who is not a defendant in this case. Shortly after the search, Young said he found a handmade knife secreted in Morgan's mattress. Morgan denied that the knife was his. Despite that denial, Morgan was "booked" for the disciplinary infraction of possessing a dangerous weapon and was moved to the prison's punitive segregation area. The "booking" apparently was done by a Lieutenant James Parr who is not a defendant in this case.

On December 16, 1985, a hearing was held by the ACI's Disciplinary Board. The Board consisted of Yakiey, Mallard, and "an unknown counselor." Morgan was assisted by Amaral but, according to Morgan, not very effectively. At that hearing, Morgan was told that Young and Brouelette whose presence he had requested as witnesses were unavailable and that the hearing would not be postponed until their appearance could be arranged. After the hearing, Morgan was found guilty of the infraction and placed in punitive segregation for a period of thirty days. Morgan appealed that determination to Ellerthorpe who affirmed the Board's decision and notified Morgan of the affirmance on December 31, 1985.

Morgan charges that the defendant's actions deprived him of his liberty without due process. More specifically, Morgan claims that his due process rights were infringed in three different ways:

1. By placing him in punitive segregation prior to his disciplinary hearing;

2. By denying him an opportunity to call witnesses at the disciplinary hearing; and

3. By failing to notify him, in a timely fashion, that his appeal from the Disciplinary Board's decision was denied.

All three claims are based on alleged violations of the so-called "Morris Rules" which are regulations prescribing the procedures to be followed in connection with disciplinary actions against prisoners at the ACI. They were promulgated pursuant to a consent decree entered in a class action brought on behalf of ACI inmates. The current version of the rules is set forth in *Morris v. Travisono*, 499 F.Supp. 149 (D.R.I.1980).[1]

The relief sought by Morgan includes compensatory and punitive damages, a declaratory judgment and an injunction prohibiting the defendants from further violating his due process rights and requiring them to quash and expunge the "booking" from his record. In addition, Morgan seeks an award of attorney's fees.

The Magistrate Judge based his recommendation of dismissal on two grounds. First, that to the extent the defendants are sued in their official capacities, the complaint fails to state a claim upon which relief can be granted because under the rule in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), "neither a State not its officials acting in their official capacities are 'persons' under Section 1983." *Id.* at 71, 109 S.Ct. at 2312. In addition, the Magistrate Judge relied on what had been the established rule in this District to the effect that the Morris Rules do not endow prisoners with a constitutionally cognizable liberty interest in remaining in the general prison population, and therefore, a § 1983 claim may not be predicated solely on a violation of those rules. *Hechavarria v. Quick*, 670 F.Supp. 456 (D.R.I.1987).

## DISCUSSION

### I. *Standard of Review*

▉ An objection to a Magistrate Judge's recommendation with respect to a

---

**1.** A final consent decree was entered on April 20, 1972, and the Rules were initially promulgated as regulations on October 10, 1972, pursuant to the Rhode Island Administrative Procedures Act ("APA"), R.I. Gen. Laws §§ 42–35–1 to 42–35–18. The regulations were the subject matter of further litigation. *See Morris v. Travisono*, 373 F.Supp. 177 (D.R.I.1974), *aff'd*, 509 F.2d 1358 (1st Cir.1975); *Morris v. Travisono*, 499 F.Supp. 149 (D.R.I.1980) (containing the current version of the Rules).

Rule 12(b)(6) motion to dismiss requires a *de novo* determination by the Court. 28 U.S.C. § 636(b)(1) (1988). A Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted); *see also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir.1980). In making that determination, the complaint should be construed in the light most favorable to the plaintiff. *E.g., Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). Every doubt should be resolved in the way most beneficial to the plaintiff, *e.g., Klimas v. International Tel. & Tel. Corp.*, 297 F.Supp. 937, 938 n. 2 (D.R.I.1969), and all well-pleaded allegations of the complaint should be accepted as true. *E.g., Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). That is particularly true when the complaint is filed by a pro se litigant whose pleadings are held to a somewhat less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

## II. *The Official Capacity Claims*

 The Magistrate Judge's observation that *Will* bars suits against state officials acting in their official capacities is not dispositive of Morgan's claims for two reasons. First, the complaint does not specify the capacities in which the defendants are sued. Accordingly, viewing it in the light most favorable to Morgan, it must be construed as asserting claims against the defendants both individually and in their official capacities.

In addition, although *Will* precludes § 1983 suits for *money* damages or other forms of retrospective relief against states or state officials acting in their official capacities, it does not prohibit suits for injunctive or declaratory relief. *Will*, 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10. Consequently, the Court must address Mor-

gan's claim that he was deprived of liberty without due process.

## III. *The Liberty Interest Claim*

 Generally speaking, prisoners do not have a constitutionally protected liberty interest in remaining in the general prison population. *Hewitt v. Helms*, 459 U.S. 460, 466–68, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). The *Hewitt* court rejected a prisoner's contention that prison officials violated his due process rights by failing to adhere to applicable prison regulations when they transferred him to administrative segregation. In so doing, the Court stated:

> While there is little question on the record before us that respondent's confinement added to the restraints on his freedom, we think his argument seeks to draw from the Due Process Clause more than it can provide.
>
> ... [Our past] decisions require that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."

*Hewitt*, 459 U.S. at 467–68, 103 S.Ct. at 869 (footnote omitted) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)).

 As already noted, the rule in this District at the time the Magistrate Judge issued his Report and Recommendation was that the Morris Rules do not call for any different result because they do not confer on ACI prisoners any liberty interest in remaining in the general population of the kind found lacking in *Hewitt*. Consequently, failure to adhere to those rules in segregating a prisoner did not implicate the prisoner's due process rights. *Hechavarria*, 670 F.Supp. at 459–61.

However, after the Magistrate Judge submitted his Report and Recommendation, the First Circuit issued its opinion in *Rodi v. Ventetuolo*, 941 F.2d 22 (1st Cir.1991), holding that the Morris Rules do vest an

inmate with a constitutionally protected liberty interest in remaining in the general prison population. Consequently, the pertinent inquiry is whether Morgan received all of the process that was due him before that interest was infringed.

In making that determination, the Court must bear in mind the distinction that the First Circuit has drawn between the due process rights attendant upon an inmate's placement in administrative segregation and those attendant upon his placement in punitive segregation. In *Rodi*, the Court described the importance of the distinction as follows:

> The distinction [between administrative and punitive segregation] is an important one, since "the procedural due process requirements which attend administrative confinement are considerably less formal than those which attend disciplinary segregation."

*Rodi*, 941 F.2d at 24 n. 2 (quoting *Domegan v. Fair*, 859 F.2d 1059, 1064 n. 4 (1st Cir.1988)).

The nature of the due process required in the case of administrative segregation was described in *Rodi* to consist of:

> "an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate may wish] to submit, within a reasonable time after confining him to administrative segregation."

*Rodi*, 941 F.2d at 28 (alteration in original) (quoting *Hewitt*, 459 U.S. at 47[2], 103 S.Ct. at 871).

■ The requirements of due process in the context of punitive segregation are less clear but appear to be those enumerated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[2] They are:[3]

1. The inmate must be supplied with "advance written notice of the claimed violation and a written statement of the fact-

finders as to the evidence relied upon and the reasons for the disciplinary action taken," *Wolff*, 418 U.S. at 563, 94 S.Ct. at 2978;

2. The inmate must be allowed at least 24 hours after notice is given to prepare for his or her appearance before the disciplinary board, *Id.* at 564, 94 S.Ct. at 2978;

3. "[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his [or her] defense when permitting [such] will not be unduly hazardous to institutional safety or correctional goals," *Id.* at 566, 94 S.Ct. at 2979; and

4. Where the inmate is illiterate or the issues complex, the inmate should be allowed the assistance of a prison staff member or a fellow inmate, *Id.* at 570, 94 S.Ct. at 2981.

■ The Morris Rules are constitutionally sufficient in that they include all of those safeguards and more. *See Morris v. Travisono*, 499 F.Supp. at 167–70. Therefore, the issues presented are whether those rules were observed and, if not, the extent to which failure to adhere to any rules exceeding the requirements of *Wolff* constitutes a due process violation. Those issues will be considered in connection with each of the violations alleged by Morgan insofar as they are applicable.

### A. Prehearing Segregation

■ Morgan contends that the defendants violated Section I.C. of the Morris Rules when they confined him to punitive segregation for five days pending his disciplinary hearing. The pertinent portion of Section I.C. states:

> If an inmate is locked up pending an investigation and disciplinary hearing, such detention must not be in the puni-

---

**2.** In its unpublished decision in *Hechavarria*, the appellate panel indicated that the standards applicable to punitive segregation were those set forth in *Wolff*.

**3.** Although the Court's detailed analysis focuses on "good time," its conclusion that certain pro-

cedures must be followed before an inmate is deprived of "good time" was explicitly extended to the disciplinary confinement situation. *See Wolff*, 418 U.S. at 571 n. 19, 94 S.Ct. at 2982 n. 19.

tive segregation area *unless* the security or safety of the institution so requires. *Morris v. Travisono,* 499 F.Supp. at 168 (emphasis added).

There are two flaws in Morgan's argument. First, the complaint contains no allegations linking the defendants to the prehearing segregation. Indeed, it alleges that Morgan was "booked" by Lieutenant Parr, who is not a party to this suit. The mere fact that some of the named defendants apparently reported the incident to Parr or are described as having general supervisory authority over the prison or its officers does not set forth any basis for holding them liable. It is well established that the concept of *respondeat superior* is inapplicable in § 1983 cases. *Gutierrez–Rodriquez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989) (citations omitted). The standard for supervisory liability in § 1983 cases is "reckless or callous indifference to the constitutional rights of others" which has not been alleged here. *Id.* (citations omitted).

In addition, the complaint is barren of any allegations that Parr or any of the defendants or their subordinates who may have participated in the "booking" process acted improperly. Thus, Morgan fails to recognize that Section I.C. confers broad discretion on prison officials to determine the circumstances under which security or safety considerations require such segregation prior to a hearing. Such determinations are subject to attack only for abuse of that discretion. In this case, Morgan's allegations provide no hint of any such abuse. On the contrary, he refers to the discovery of a homemade knife in his cell which clearly would constitute a threat to security and safety sufficient to warrant immediate segregation of the prisoner in whose cell it allegedly was found. Consequently, any of the defendants who acted on the basis of that information violated neither the Morris Rules nor Morgan's due process rights.

**B. Inability to Present Witnesses**

Morgan's second contention is that the defendants violated Section III.C.4. of the Morris Rules by denying his request to call Young and Brouelette as witnesses at his disciplinary hearing. Section III.C.4. provides:

C. The hearing shall be conducted in the following manner:

. . . .

4. If the inmate thinks the charge against him is untrue (in whole or in part), he may present information available to him and others. Said presentation shall include the right to call a reasonable number of witnesses, both adverse and favorable and examine said witnesses.

*Morris v. Travisono,* 499 F.Supp. at 169–70.

As already noted, that right is one of the components of minimal due process identified in *Wolff.* However, both *Wolff* and the language of the rule make it plain that the right is not absolute. In *Wolff,* the Supreme Court found that an "unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that . . . may be essential to carrying out the correctional program of the institution." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2979. Accordingly, the Court recognized that prison officials have considerable discretion "to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority. . . ." *Id.*

On the other hand, just as a prisoner's right to call witnesses is not unlimited, neither is the discretion of prison officials to deny such a request. The reason for not acceding to a request to call witnesses must be a legitimate one, and it must be expressed. Thus, in *Ponte v. Real,* 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), the Supreme Court stated that the prison officials responsible for the denial "may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify. . . ." *Real,* 471 U.S. at 497, 105 S.Ct. at 2196. The reason may be offered at the time of the disciplinary hearing or during a later court proceeding. However, if it is not stated contemporane-

ously, the inmate may assert that failure as a basis for a § 1983 suit. *Id.*

In this case, Morgan avers that no reason for the "unavailability" of the witnesses was proffered at the time of the hearing. Therefore, the claims against those defendants allegedly responsible for rejecting Morgan's request cannot be dismissed at this time. However, the only defendants who could have participated in that decision are those who were members of the Disciplinary Board, namely, Yakiey and Mallard. Accordingly, the complaint fails to state a claim against any other defendants on this ground, except Ellerthorpe who is, presumably, the only defendant with the authority to vacate a guilty decision of the Disciplinary Board.

### C. Timeliness of Notification

Morgan's third claim is that the defendants violated Section IV.A. of the Morris Rules when Ellerthorpe, as Deputy Assistant Director, failed to provide him with timely notification that his appeal from the Disciplinary Board's decision had been denied. Section IV.A. states:

> Within three days of the Disciplinary Board decision (Sundays and holidays excluded) if an inmate requests an appeal of a decision of the disciplinary board, the record of any proceedings shall be forwarded to the Assistant Director or Deputy Assistant Director. This review *shall* be completed and the inmate notified of the decision on review within *one* week. Disposition shall be suspended during this period.

*Morris v. Travisono,* 499 F.Supp. at 170 (emphasis added). Morgan alleges that his appeal was filed on December 17, and he did not receive notice of its denial until December 31, *two* weeks later.

That contention is not as frivolous as may appear at first blush. In *Maldonado Santiago v. Velazquez Garcia,* 821 F.2d 822 (1st Cir.1987), an inmate was placed in segregation and transferred to another institution when a fight occurred in which she was believed to have participated. Under prison rules, she was entitled to a hearing within seven days. The hearing was not conducted until nine days after her segregation and transfer. Moreover, at the hearing the Warden of the institution from which she was transferred testified that the conditions giving rise to her transfer no longer existed. Accordingly, the prisoner was returned to that institution two days later than she would have been if the rules had been observed. The Court of Appeals held that the delay violated her due process rights.

A different result was reached in *Smith v. Massachusetts Dep't of Correction,* 936 F.2d 1390 (1st Cir.1991). There, an inmate was transferred to a higher security prison because of what prison officials believed to be his role in the rape of another inmate. Approximately one month after the transfer, the inmate was "booked" for the rape and ultimately convicted. He argued that the "booking" was not timely under applicable prison regulations and, therefore, that his due process rights had been violated. The Court of Appeals rejected that argument observing that, unlike in *Maldonado Santiago,* the regulations embodied only "procedural" time limits that created no liberty interest. *Smith,* 936 F.2d at 1397 n. 11.

The distinction between the two cases appears to be that in *Maldonado Santiago,* the prisoner was wrongfully being deprived of a constitutionally protected liberty interest during each day of the delay. *Rodi,* 941 F.2d at 29 & n. 7. That is to say, her segregation and confinement at a different institution were prolonged by the fact that her hearing did not take place within the prescribed time. On the other hand, in *Smith,* the delay in "booking" the inmate did not deprive him of any liberty to which he was otherwise entitled. His transfer was based on the perception that he was a threat to safety and security, and he was ultimately found guilty of the offense that was the subject of the "booking."

This case is much more analogous to *Smith* than to *Maldonado Santiago.* Unlike the inmate in *Maldonado Santiago,* Morgan had a timely disciplinary hearing. Furthermore, unlike the inmate in *Maldonado Santiago,* but like the inmate in

*Smith,* Morgan's appeal was rejected. Therefore, any delay in notification did not result in Morgan being kept in segregation for a period longer than he otherwise would have been.

In short, the Court finds that Morgan's allegations regarding the delay in notification do not implicate any defendant beside Ellerthorpe. Furthermore, they do not state a claim against Ellerthorpe because, at least in this context, the prescribed time limit was purely procedural and any failure to adhere to it did not deprive Morgan of any liberty he otherwise would have enjoyed.

### IV. *Available Relief*

Having determined that the only claim asserted by Morgan that can survive the defendants' motion to dismiss is the one arising from allegations that Yakiey and Mallard unjustifiably refused his request to call witnesses at the disciplinary hearing, the sole remaining issue is the nature of the relief to which Morgan might be entitled if those allegations are proven.

### A. Money Damages—Will v. Michigan and Qualified Immunity

■ It is clear, under *Will,* that none of the defendants can be liable for money damages to the extent they are sued in their official capacities. *Will,* 491 U.S. at 70–71, 109 S.Ct. at 2311. Morgan's argument that *Will* should not be applied retroactively to cases filed before it was decided is contrary to established precedent in this Circuit. *See e.g., Pontarelli v. Stone,* 930 F.2d 104, 113 & n. 17 (1st Cir.1991); *Fred v. Roque,* 916 F.2d 37, 39 n. 3 (1st Cir.1990); *Hoffman v. City of Warwick,* 909 F.2d 608, 613 n. 4 (1st Cir.1990).

■ It is equally clear that, under the doctrine of qualified immunity, neither Yakiey nor Mallard can be individually liable for money damages. Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations omitted). In *Rodi,* the First Circuit *sua sponte* held that, prior to that decision, no reasonable prison official could have known that the Morris Rules endowed Rhode Island prisoners with a liberty interest protected by the Fourteenth Amendment. Accordingly, the doctrine of qualified immunity shielded such officials from claims based on alleged violation of those rules prior to that time. *Rodi,* 941 F.2d at 30–31.

### B. Injunctive and Declaratory Relief

■ Much of the injunctive and declaratory relief sought by Morgan is inappropriate because there are no allegations that the deprivations of which he complains are likely to recur. The lone exception is the request that his "booking" and, presumably, the determination that he committed the infraction charged be quashed and expunged. Since those acts may adversely impact Morgan in ways such as reducing the "good time" credit to which he might otherwise be entitled, injunctive or declaratory relief requiring expungement might be appropriate if the defendants are unable to justify their failure to comply with Morgan's request to call Young and Brouelette as witnesses at the disciplinary hearing.

### CONCLUSION

For all of the foregoing reasons, the Court finds that Morgan's complaint does not state a claim against any of the defendants except Yakiey, Mallard and Ellerthorpe. The Court further finds that any remedies Morgan might have against those defendants are limited to injunctive relief directing that his "booking" be quashed and any "good time" he has lost, as a result, be restored.

Accordingly, it is hereby ORDERED THAT:

1. The Motions to Dismiss by all defendants except Yakiey, Mallard and Ellerthorpe are granted.

2. The Motions to Dismiss by Yakiey, Mallard and Ellerthorpe are granted with respect to all claims but those for injunctive and declaratory relief with respect to the "booking" as set forth in Morgan's "Second Cause of Action."

IT IS SO ORDERED.