43 F.3d 1456
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Kavin CORNERS, Plaintiff, Appellant,
v.
Paul SACCOCIA, et al., Defendants, Appellees.
 No. 94-1519
 United States Court of Appeals,
First Circuit.
 Jan. 17, 1995.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge ]
 Kavin Corners on brief pro se.
 David J. Gentile on brief for appellees.
 D.R.I.
 AFFIRMED.
 Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.
 PER CURIAM.
 
 
 1
 We affirm the judgment substantially for the reasons recited in the magistrate-judge's comprehensive report (as modified in part by the district court), adding only the following observations.
 
 
 2
 Plaintiff insists that the lower court erred in invoking the doctrine of qualified immunity. In order to overcome such a defense, plaintiff bore the burden of demonstrating that the law regarding a prison disciplinary board's reliance on information from a confidential informant was "clearly established" by May 1991. See, e.g., Horta v. Sullivan, 4 F.3d 2, 13 (1st Cir. 1993). Yet the sole law to which plaintiff has referred in this regard is that contained in the so-called "Morris Rules"-a set of procedures governing prison administration first adopted in 1972 as part of a consent decree and later promulgated as state law. See, e.g., Rodi v. Ventetuolo, 941 F.2d 22, 23, 26-27 (1st Cir. 1991).[1]
 
 
 3
 While the Morris Rules were designed to implement various constitutional protections, not every violation of those rules results in a claim of constitutional dimension. See, e.g., Morris v. Travisono, 509 F.2d 1358, 1362 (1st Cir. 1975) (noting that Morris Rules embody both "what is ... constitutionally necessary and what is not"); Nicholson v. Moran, 835 F. Supp. 692, 697 n.18 (D.R.I. 1993); see also DesRosiers v. Moran, 949 F.2d 15, 21 (1st Cir. 1991) ("Not every breach of [the Morris Rules] will give rise to an Eighth Amendment claim."); cf. Davis v. Scherer, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.") (footnote omitted).[2] Plaintiff's reliance on the Morris Rules provides no guidance as to what is independently required in this context as a matter of federal due process. See generally, e.g., Russell v. Scully, 15 F.3d 219, 223-24 (2d Cir. 1993) (on petition for rehearing); Taylor v. Wallace, 931 F.2d 698, 701-02 (10th Cir. 1991) (reviewing cases); Baker v. Lyles, 904 F.2d 925, 931-33 (4th Cir. 1990); Langton v. Berman, 667 F.2d 231, 235 (1st Cir. 1981). Inasmuch as neither side has addressed the contours of the constitutional right at stake, we shall likewise decline to do so. See, e.g., Wilson v. Brown, 889 F.2d 1195, 1196 n.3 (1st Cir. 1989) (plaintiff's pro se status "does not make us more inclined to interpret damage pleas further than their plain language permits").
 
 
 4
 Plaintiff also challenges the district court's refusal to order that he be reclassified to minimum security/work release status.[3] His sole argument in this regard is that the applicable regulations endow him with an enforceable liberty interest. We are unable to address this contention inasmuch as the regulations are not in the record-although we note that similar arguments have been unavailing in the past. See, e.g., Cugini v. Ventetuolo, 781 F. Supp. 107, 112-13 (D.R.I.), aff'd, 966 F.2d 1440 (1st Cir. 1992) (table); State v. Pari, 553 A.2d 135, 137-38 (R.I. 1989). Nor need we decide whether the court abused its discretion in declining to direct reconsideration of plaintiff's classification status purely as a remedial measure, inasmuch as the Morris Rules themselves contemplate such relief. See Morris v. Travisono, 499 F. Supp. 149, 162 (D.R.I. 1980) (directing reclassification meeting to be held "whenever a major change in an inmate's program appears indicated").[4] The expungement of the disciplinary violation from plaintiff's record-which violation led to his reclassification in the first place-would obviously fall within this category. Any grievances plaintiff might harbor regarding his entitlement to work release status are collateral to the instant proceeding and can, if necessary, be pursued separately.
 
 
 5
 We have reviewed plaintiff's remaining claims and find them without merit.[5]
 
 
 6
 Affirmed.
 
 
 
 [1]
 The current version of the rules is reproduced in Morris v. Travisono, 499 F. Supp. 149, 161-74 (D.R.I. 1980)
 
 
 [2]
 In turn, to the extent plaintiff's argument rests on our holding in Rodi that the Morris Rules "imbue prison inmates with a liberty interest in remaining in the general prison population," 941 F.2d at 23, it suffices to note that such opinion was issued after the events in question here. See, e.g., id. at 30-31 (finding such result not to have been clearly established prior thereto); Morgan v. Ellerthorpe, 785 F. Supp. 295, 303 (D.R.I. 1992)
 
 
 [3]
 Although the magistrate-judge recommended that the classification board be directed to review plaintiff's status, the district court declined to adopt this measure
 
 
 [4]
 Moreover, if plaintiff currently resides in "B" status (a matter unclear from the record), his classification status would have to be reviewed "at least" every 90 days. See Morris, 499 F. Supp. at 166
 
 
 [5]
 Plaintiff is correct that defendant Saccoccia's failure to interview witnesses was cited in the complaint (contrary to the finding made below). Yet such failure was clearly harmless in light of the magistrate's findings as to the anticipated testimony of such individuals. In turn, plaintiff's claim for loss of "potential earnings" is subsumed within his claim for damages, and so is barred on qualified immunity grounds