**Gregory Nolan PARKER**

v.

**George A. VOSE, Jr., Walter Whitman, Lt. Kenneth Viveiros.**

**Civ. A. No. 93–0649L.**

United States District Court,
D. Rhode Island.

Nov. 28, 1994.

---

Gregory Nolan Parker, Pro Se.

Michael B. Grant, Office of Legal Dept., Dept. of Corrections, Cranston, RI, for defendants.

## MEMORANDUM AND ORDER

LOVEGREEN, United States Magistrate Judge.

In this action brought pursuant to 42 U.S.C. § 1983, plaintiff, a state prisoner, asks this court to decide that his disciplinary board hearing on September 20, 1993 violated the due process requirements of the Fifth and Fourteenth Amendments to the United States Constitution. This matter was referred to me for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c) and the consent of the parties. Trial was held on November 3, 1994.

### Background

On November 24, 1993, plaintiff, Gregory Nolan Parker ("Nolan Parker"), filed this complaint alleging a violation of his constitutional rights. Specifically, he alleges that he was denied due process during his disciplinary board hearing on September 20, 1993. Defendants are George A. Vose, Jr. ("Vose"), Director of the Rhode Island Department of Corrections ("DOC"), Walter Whitman ("Whitman"), Warden of Maximum Security at the Adult Correctional Institution ("ACI"), where plaintiff was housed at all relevant times, and Lt. Kenneth Viveiros ("Viveiros"), a supervisory correctional officer at Maximum Security and the chairman of the disciplinary board that heard the charges against plaintiff.

Plaintiff alleges that on September 15, 1993, he was read a booking (Exhibit 1) at approximately 7:45 p.m. This booking arose out of an incident which occurred on the previous day, September 14, 1993, at approximately 1:20 p.m. At that time, Nolan Parker was a prison laundry worker and had held this position for a few weeks. His duties included washing inmates' laundry, repairing laundry bags, drying inmates' laundry, separating the bags, weighing the bags and making a list, and general clean-up of the laundry room. Plaintiff testified that it was not part of his duties to fold any of the laundry. Present in the prison laundry room the morning of September 14, 1993 were several inmates, the supervisor of the laundry room named Yvonne Engley ("Engley"), a correctional officer named Robert Alden ("Alden") and possibly another correctional officer named Ernest Grossguth ("Grossguth"). By early afternoon when this incident occurred, the prison laundry room was occupied by plaintiff, another inmate assisting him, Samuel Wilson ("Wilson"), Engley and Alden. At approximately 1:20 p.m., Wilson was observed by Engley leaning into a cart located on the side of a dryer. Engley and Alden investigated and found folded inmate laundry in and around the cart. Plaintiff was working within 10 feet of Wilson. Folding another inmate's laundry was contrary to prison policy and forbidden, as it might lead to retribution if the necessary payment for this service was not forthcoming from the involved inmate. The laundry bags containing the folded laundry had an identification tag on them which provides the cell number of the inmate whose laundry is in the bag. Alden seized the laundry bags containing the folded laundry.

While investigating this incident, Alden observed Nolan Parker discard an empty cigarette pack onto the dock just outside the laundry room. The empty cigarette pack was observed by Alden to contain a piece of paper which Alden retrieved. This paper contained a list of cell numbers which corresponded to the cell numbers on the laundry bags containing the folded laundry previously seized from Wilson. Alden felt he had sufficient evidence to conclude that Nolan Parker and Wilson were operating an illegal business of folding inmates' laundry in return for some type of compensation. Alden showed the list of cell numbers from the cigarette pack to Grossguth who was on the dock awaiting the laundry truck coming to pick up the clean laundry.

On the morning of September 15, 1993, plaintiff was advised that he was not to report to his laundry room job. As stated, at approximately 7:45 p.m., plaintiff was read a booking for the following infraction—"Disobeying an order 'doing other inmates [sic] laundry.'" Exhibit 1, line 9. This infraction was described as follows:

> On this date inmate Nolan, was observed taking laundry bags apart to be washed separate [sic]. Inmate Nolan, has been warned in the past about doing other inmate's [sic] laundry. Inmate Nolan, thru [sic] away a cigarette pack with a list of bag's [sic] he had to do.

Exhibit 1, line 12.

■ Thereafter, Nolan Parker arranged to have a tape brought to the ACI Maximum Security facility in order to have his disciplinary board hearing tape-recorded. On September 18, 1993, Correctional Officer Masi received the tape to be used to record the hearing. Exhibit 2. Pursuant to the *Morris* Rules, an inmate appearing before a disciplinary board may have the hearing recorded if he furnishes the tape to be used in the recording process. *Morris v. Travisono*, 499 F.Supp. 149, 170 (D.R.I.1980). Ordinarily, an inmate would have his disciplinary board hearing at the next session following the booking. Because plaintiff requested the hearing be recorded, additional time was granted to him to provide a tape. The hearing was held on September 20, 1993. Plaintiff contends his due process rights were violated in three ways:

1. The tape furnished by plaintiff could not be located and his hearing was not recorded.
2. The disciplinary board denied plaintiff his right to call witnesses; and
3. The chair of the board offered testimony on which the board relied in finding plaintiff guilty of the infraction charged.

At the hearing, plaintiff pleaded not guilty and was assisted by an inmate counselor, Kirk Lamboy ("Lamboy"), who helped present the defense. During the course of the proceedings, Alden testified as to what he observed concerning the laundry bags filled with folded clothes and that the list of cell numbers in the cigarette pack discarded by plaintiff corresponded with the cell numbers on laundry bags containing folded clothes.

Plaintiff testified that the list of cell numbers in the cigarette pack represented those inmates offering complaints about the laundry service—i.e., the laundry was returned dingy or the laundry was burned due to excessive heat in the dryers. Plaintiff testified he had the list on his person to give it to Deputy Warden Alfred Leach ("Leach") who, at the time, was Deputy Warden for Programs at the Maximum Security facility. The list was to be given to Deputy Warden Leach so that the complaints could be addressed and mitigated. According to plaintiff, he testified at the board hearing that he had previously mentioned inmate complaints about the laundry to Deputy Warden Leach and that Leach had requested a list of complainants.

At the hearing, plaintiff requested the board call two (2) witnesses on his behalf—Deputy Warden Leach and Engley, supervisor of the laundry room. The chair of the disciplinary board, Lt. Viveiros, declined to do so. The chair based this decision on the fact that Deputy Warden Leach was not an eyewitness to this infraction and could offer nothing to assist the board in rendering a decision. As to Engley, the chair stated the board would accept plaintiff's statement that she did not see plaintiff folding any inmate's clothes on September 14, 1993.

During the hearing, the chair stated to plaintiff that approximately one week earlier he had seen special laundry (i.e. folded) being brought into the cell block known as Prudence I and asked plaintiff if he had any knowledge about that. Plaintiff replied that he did not.

Following the disciplinary board hearing, plaintiff was found guilty of the infraction. As a result, plaintiff lost his job in the laundry room and was on unemployed status until he could obtain another prison job. While on unemployed status, an inmate is confined to his cell between 4 to 5 hours more per day than he would be if employed.

Plaintiff appealed this decision to Warden Whitman. In his appeal, plaintiff listed four grounds including: (1) the booking was read to him more than 30 hours after the infraction occurred and the time limit is 24 hours; (2) he was denied a recording of his hearing because the disciplinary board refused to continue the hearing until the tape was located; (3) the disciplinary board refused to call witnesses requested by plaintiff; and (4) that the booking be dismissed, and employment be re-instated either in the laundry room or another position. Exhibit 3.

On September 27, 1993, Warden Whitman denied the appeal and affirmed the finding and action of the disciplinary board.

This lawsuit followed. At the trial of this matter Lt. Kenneth Viveiros testified that he was the chair of the disciplinary board on September 20, 1993 and that the board heard plaintiff's case that day. When advised by plaintiff that a tape had been sent to and received by the ACI for recording purposes, Lt. Viveiros sent another officer to locate the tape. When this was unsuccessful, Lt. Viveiros personally searched for the tape, but it was not located where the tapes are usually stored. Although plaintiff advised Lt. Viveiros that a tape had been sent and a receipt issued, plaintiff did not produce the receipt nor could he remember the name of the correctional officer receiving the tape. As a result, Lt. Viveiros declined to continue the hearing and proceeded. Approximately three to four days following the hearing, the tape was located in a desk drawer. The proper procedure was not followed in storing the tape, but from all the evidence, it is clear that this error was inadvertent and due to the inexperience of the receiving correctional officer and not intentional. Lt. Viveiros stated that he did not honor plaintiff's request to call as a witness Deputy Warden Leach, because Leach was not an eyewitness to the infraction and his testimony could offer nothing to assist the board in its determination. Lt. Viveiros did state that the board would accept as fact that Deputy Warden Leach had granted plaintiff permission to maintain a list of inmates who complained of problems with their laundry. Plaintiff's request to call Engley was denied, because plaintiff stated all he wanted to show through Engley was that she never saw plaintiff folding clothes. Lt. Viveiros stated the board would accept that fact without Engley's testimony. Lt. Viveiros did testify that the board honored plaintiff's request to have Officer Alden testify. He also stated that plaintiff had a second job at Maximum Security which required him to collect the soiled laundry at night for washing the next day. This second job gave plaintiff an opportunity to make his contacts with the inmates.

As to the comments about the inmate's laundry on Prudence I, Lt. Viveiros testified he asked plaintiff if he had any knowledge concerning the special laundry on Prudence I. When plaintiff said he did not, Lt. Viveiros dropped the subject. Lt. Viveiros testified that he never relied on any fact concerning Prudence I to decide this case. His decision was based solely on the testimony of Alden and the list of cell numbers discarded by plaintiff that matched the cell numbers on the bags of folded laundry confiscated in the laundry room.

Jeanne Duquette ("Duquette") also testified that she was a disciplinary board member at plaintiff's hearing. She was an Adult Counselor at the time and has in the past assisted inmates in similar hearings. She verified that plaintiff stated he sent a tape so the hearing could be recorded and that a diligent but unsuccessful search was made for the tape. Duquette could not recall plaintiff producing any receipt for the tape. The hearing proceeded without being recorded. Plaintiff did request two witnesses—Leach and Engley—but they were not called before the board because they could add nothing to assist the board in reaching a decision. Although Duquette wanted to hear Leach's testimony, she felt there was sufficient evidence in the record to find plaintiff guilty. She also recalled that at the hearing, Lt. Viveiros stated he was in Prudence I when folded laundry in bags was returned to inmates. He stated he asked the inmates who did the special laundry for them, but no inmate would respond.

At the hearing, Alden testified and the list from the cigarette pack was introduced into evidence. Alden testified that on September

14, 1993 he was in the laundry room at approximately 1:20 p.m. with Engley, Wilson and plaintiff. He observed Wilson bending over a clothes cart on the blind side of the dryer. He investigated and discovered folded clothes in the cart and around the dryer. Plaintiff was about 10 feet away. Alden confiscated the laundry bags of folded clothes but later released the bags and removed the two inmates from the jobs in the laundry room.

Officer Grossguth had opened the overhead door leading to the dock in anticipation of the laundry truck arriving to pick up clean laundry. Alden observed plaintiff throw an empty cigarette pack onto the dock. The wind blew the empty pack to a position where Alden could observe a piece of paper inside the pack. He removed the paper and saw it contained a list of cell numbers. He checked the cell numbers on the confiscated laundry bags and found a corresponding match with the cell numbers on the list. He concluded that Wilson and Nolan Parker were conducting a business of providing special laundry services to fellow inmates. This was contrary to prison policy. As a result, on September 15, 1993, Alden wrote an entry in the log book filing charges against plaintiff and Wilson. Exhibit 5. Alden did testify that he did not observe Nolan Parker folding clothes on September 14, 1993, but the list of matching cell numbers caused him to believe Wilson and Nolan Parker were acting together.

Officer Grossguth testified that he was shown the list of cell numbers by Alden. He never observed plaintiff folding clothes and did not testify at plaintiff's disciplinary board hearing.

Warden Whitman testified that he denied plaintiff's appeal because he could find nothing in the record that would alter the board's decision. Exhibit 4. Plaintiff only sought a dismissal of the board's decision and not a rehearing. Whitman believed the booking was timely because the 24 hour deadline commences at the time the infraction is logged, not when the infraction occurs. He found no malice in the board's failure to locate the tape, was never advised the tape was located 3 to 4 days after the hearing, and was never advised of the receipt for the tape or forwarded a copy thereof. He did not believe Leach and Engley would add anything to the hearing as neither witnessed the infraction and he found no substantial procedural error in the hearing. Consequently, he denied plaintiff's appeal and affirmed the board's finding and action.

The plaintiff testified that he was working in the laundry room on September 14, 1993 with four other inmates. Present also were Engley, the laundry room supervisor, and Officer Alden. He knew that he was not to fold any other inmate's clothes. He denied requesting Wilson to fold any inmate's clothes. He denied folding any inmate's clothes with the possible exception of a tee shirt.

At approximately 1:20 p.m. on September 14, 1993, Engley came into the laundry room where only Wilson and plaintiff were present and working. She observed Wilson folding clothes and asked him what he was doing. Wilson admitted to folding his own clothes, but Engley saw that the cell number on the bag was not Wilson's cell number. Alden then entered the laundry room and discussed the situation with Engley. Wilson then admitted he was folding another inmate's clothes. During this time, plaintiff testified he continued with his duties. Approximately 20 minutes later, plaintiff testified Wilson told him that Alden had inquired about the list of cell numbers. Plaintiff admitted it came from his cigarette pack. The next morning, September 15, 1993, plaintiff was advised not to return to his job in the laundry room, and later that evening at approximately 7:45 p.m., he was read the booking. This was the first occasion that he learned about the infraction. However, earlier in the day, plaintiff spoke with Correctional Officer Brian Tung who was in charge of assigning jobs and learned for the first time that he would be booked.

Plaintiff testified that the list of cell numbers was prepared by him and represented those inmates making complaints about the laundry services. The list was to be presented to Deputy Warden Leach who had earlier given plaintiff permission to make the list. Plaintiff testified that no inmate on the list

received folded clothes on September 14, 1993 with one exception, but plaintiff denied folding that inmate's clothes.

Plaintiff testified he had three copies of the list, all handwritten *by himself. One copy was kept in the cigarette pack to be given to Leach when plaintiff next saw him, one copy was kept behind the washer/dryer area and the third copy was kept under plaintiff's mattress.

Plaintiff admitted that inmates' clothes were folded in the laundry room on September 14, 1993, but not by him. He knew who folded the clothes but refused to provide any names.

Plaintiff also testified that he never requested that Alden testify at the disciplinary board hearing. He stated that Lt. Viveiros' testimony that plaintiff called Alden as a witness was false. No one else present at the hearing could remember who called Alden for testimony. Insofar as this lawsuit is concerned, it makes no difference who called Alden. The board had a right to hear Alden's testimony whether the board or plaintiff called him.

Samuel Wilson testified that he was in the laundry room on September 14, 1993 after lunch. Plaintiff was on the dock smoking. Wilson was near certain laundry carts when Engley approached and saw folded clothes. Alden then arrived and Engley told him Wilson was folding clothes. Alden also found a cigarette pack containing a list of cell numbers. Wilson denied he knew what the list was although Alden stated it was a list of inmates to receive folded clothes. Wilson denied seeing plaintiff fold any clothes that day. Alden allegedly stated that he would not book Wilson, but Wilson was not to fold any more clothes. The next day, September 15, 1993, Wilson was read a booking at approximately 7:45 p.m. Subsequently, at his disciplinary board hearing, Wilson's booking was dismissed as untimely. Exhibit 6.

Wilson did testify that he was aware of inmate complaints concerning the laundry. He was not aware plaintiff prepared and carried a list of the complainants. He also stated that some of the folded clothes in the laundry room were not folded by him, but he did not see plaintiff fold them.

Kirk Lamboy, adult counselor, testified he assisted plaintiff at the disciplinary board hearing. He confirmed the tape could not be located. On behalf of plaintiff, he requested witnesses be called but only Alden testified. Lamboy did not identify those witnesses he requested be called on plaintiff's behalf.

Deputy Warden Alfred Leach testified that plaintiff did speak to him about problems with the laundry service. He could not recall what problems or when this conversation took place. Plaintiff had a sheet of paper in his hand which he stated were inmate complaints. Leach was aware that some laundry bags melted due to excessive heat in the dryers and some bags would break open spilling their contents. He asked Engley to keep a list of broken laundry bags as she was the supervisor. Although Leach could recall a conversation with plaintiff about problems with the laundry bags, he could recall no specifics. He stated there was a long standing policy in the laundry room not to open any laundry bag for any reason. He stated he could not have offered any additional information had he been called as a witness at the disciplinary board hearing.

Deputy Warden Leach also produced the log book and the specific entry for plaintiff's infraction. Exhibit 5. The entry was made September 15, 1993. Leach testified that although correctional officers are encouraged to enter bookings by the end of their shift on which the infraction occurs, it is acceptable to make the entry within one day of the infraction as was done here. The 24 hour time period within which the booking must be read to the inmate commences when the infraction is placed in the log book. Here the booking was read the same date as the entry into the log book.

Lastly, because Engley was out of work due to injuries suffered in an automobile accident, the parties stipulated that Engley never observed plaintiff folding inmate laundry on September 14, 1993.

### Discussion

A. *Legal Standard*

"Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the

Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory....'" *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). In order to be successful in presenting a § 1983 claim, a plaintiff must prove the existence of a federal constitutional or statutory right and a deprivation of that right by a person acting under color of state law. *Watterson v. Page,* 987 F.2d 1, 7 (1st Cir.1993).

Here plaintiff alleges that he was deprived of his constitutional rights secured by the Fifth and Fourteenth Amendments, namely, due process.

■ The United States Supreme Court has stated the minimum requirements of due process in disciplinary hearings in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). These include advance written notice to the inmate of the claimed violation, a written statement of the factfindings as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 563, 94 S.Ct. at 2978. Notice of the hearing is essential, at least 24 hours, in order to give the inmate an opportunity to prepare his defense before the disciplinary board. *Id.* at 564, 94 S.Ct. at 2978–79. The inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to prison safety or correctional goals. *Id.* at 566, 94 S.Ct. at 2979–80.

### B. *Recording the Disciplinary Board Hearing*

■ Plaintiff argues that these defendants, or some of them, breached his right to tape-record the proceedings or approved this breach on review. The facts are undisputed that plaintiff provided a tape to an ACI correctional officer who prepared a receipt and placed the tape in a storage area where such tapes are not usually stored. At the hearing, a diligent search was made for the tape without success. Plaintiff did not show his receipt nor could he recall the name of the ACI officer involved. Lt. Viveiros testified the board hears between 25 and 30 matters each session and he could not postpone this hearing any longer. Plaintiff has not shown any constitutional right violated by Viveiros' action. The *Morris* Rules state:

> Any inmate appearing before a disciplinary board may upon request have a recording made of the hearing provided that the equipment for said recording must be furnished by the inmate and that said recordings are to be impounded except for purposes of administrative or judicial review.

*Morris v. Travisono,* 499 F.Supp. at 170.

Plaintiff argues that failure to record the disciplinary hearing violated his Fourteenth Amendment rights. The Fourteenth Amendment reads in part: "nor shall any State deprive any person of life, liberty, or property without due process of law," and protects "the individual against arbitrary action of government," *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974).

Procedural due process questions require a two-step analysis: first, whether there exists a liberty or property interest which has been interfered with by the State; and second, whether the procedures attendant upon that deprivation were constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). Protected liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Id.* (citing *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983)). Plaintiff is hard pressed to argue that the failure to tape record his hearing is a violation of the Due Process Clause in light of the Supreme Court's statements in *Thompson. Id.* àt 460–461, 109 S.Ct. at 1908–09.

However, state law may create enforceable liberty interests in the prison setting. *Id.* at 461, 109 S.Ct. at 1908–09. The obligation of the Court is to examine in detail the language of the relevant statute or regulation. *Id.*

"A State creates a protected liberty interest by placing substantive limitations on official discretion." *Id.* (citing *Olim v. Waskine-*

*koma,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983); *Maldonado Santiago v. Velazquez Garcia,* 821 F.2d 822 (1st Cir.1987)). Most commonly, States create liberty interests by establishing "substantive limitations" governing official decision-making and by mandating, when the relevant criteria have been met, the decision to be made. *Id.* 490 U.S. at 462, 109 S.Ct. at 1909–10.

Here, there is no mandatory language in the *Morris* Rules concerning the recording of a disciplinary hearing. The applicable *Morris* Rules language is clearly permissive— "Any inmate ... *may* upon request have a recording made...." There is no requisite mandatory language here that would establish a liberty interest entitled to protection under the Due Process Clause.

The options open to the board were to proceed with the hearing as all interested parties were present and ready or continue the hearing until the missing tape could be located or replaced. At the time of the hearing, the board did not know how long it would take to locate the tape or replace it. Since all plaintiff is entitled to is a full and impartial hearing, the board acted appropriately in proceeding with the hearing, especially when plaintiff did not produce any receipt or any receiving officer's name so that person could be contacted to assist in locating the tape. There is no evidence in this record that any defendant participated in losing plaintiff's tape so that the proceedings could not be recorded. To the contrary, Lt. Viveiros testified that he sent another officer to locate the tape and when he was unsuccessful, Lt. Viveiros personally searched for the tape also unsuccessfully. This testimony was supported by Duquette and not contradicted by plaintiff or his counsellor, Lamboy. Therefore, I find that defendants' failure to locate the tape and their decision to proceed without the tape does not rise to a deprivation of a constitutional right under these circumstances.

### C. *Timely Reading of the Booking*

■ Plaintiff contends that the charges against him should have been dismissed by the board because the booking was not read to him until more than 30 hours after the infraction. The incident in the laundry room occurred on September 14, 1993 at approximately 1:20 p.m., and the booking was not read to him until September 15, 1993 at 7:45 p.m. Plaintiff does not support this contention with any written policy requiring the booking be read within 24 hours of the infraction. Testimony from Warden Whitman demonstrated that bookings are to be read to the inmate within 24 hours, but the time commences when the infraction is logged and not when it occurs. While it is true that the prison administration encourages correctional officers to log infractions by the end of their shift, it is acceptable to do this within one day. Here plaintiff was read his booking on the same day the infraction was logged.

Plaintiff points to no constitutional requirement, statute or case law, in support of his position. The *Morris* rules require that the charging officer file a written report thereof to a superior officer "as soon as possible after the alleged violation occurs." 499 F.Supp. at 168. The superior officer "shall with dispatch and under any circumstances no later than one day after filing the charge, orally inform the inmate of the charge against him." *Id.* at 169. Here, plaintiff was orally informed of the charge on the same day as it was filed, namely, September 15, 1993. The infraction was logged on September 15, 1993, the day after the infraction occurred and had to be read to the inmate within one day. This was accomplished. While the reporting officer, Alden, would have been well-advised to log this infraction at the end of his shift, waiting until his next shift on the following day does meet the "as soon as possible" requirement. Any delay here did not prejudice plaintiff's defense before the disciplinary board nor has plaintiff so argued. I find that the time constraints on reporting and reading the booking have been met.

### D. *Right to Call Witnesses*

■ Plaintiff contends that defendants violated his due process rights by denying his request to call Deputy Warden Leach and Engley, supervisor of the laundry room. Indeed, the *Morris* Rules require that the in-

mate be permitted to present a defense including "the right to call a reasonable number of witnesses, both adverse and favorable and examine said witnesses." *Morris v. Travisono,* 499 F.Supp. at 170. However, the right to call witnesses is not absolute. *Morgan v. Ellerthorpe,* 785 F.Supp. 295, 301 (D.R.I.1992). Witnesses may be refused where calling them may create the potential for disruption, a risk of reprisal or undermine authority. *Wolff v. McDonnell,* 418 U.S. at 566, 94 S.Ct. at 2979–80. Witnesses may also be refused on the basis of irrelevance or lack of necessity. *Id.*

While the board does have the discretion to deny a request to call a witness, that discretion is limited. *Morgan v. Ellerthorpe,* 785 F.Supp. at 301. The reason for denying a request to call witnesses must be legitimate and expressed. *Id.* The United States Supreme Court has stated that the board denying the inmate's request to call witnesses "may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify...." *Ponte v. Real,* 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985). That reason may be provided during the hearing or during a later court proceeding. *Id.*

■ Here the testimony from Lt. Viveiros is that the board refused plaintiff's request to call Deputy Warden Leach because he was not an eyewitness to the infraction and could offer no information thereon. In essence, the board did not call Leach based on irrelevance, although it was accepted as fact that Deputy Warden Leach approved plaintiff's request to maintain a list of inmates offering complaints about their laundry. While it is true that board member Duquette testified she wanted to hear Leach's testimony, she also testified there was sufficient evidence in the record before the board to find the plaintiff guilty as charged.

In addition, Deputy Warden Leach testified in this trial. He stated he could recall no conversation with plaintiff granting permission to plaintiff to maintain a list of complainants concerning inmate laundry. He stated he saw no reason to give such permission when he had a laundry room supervisor, Engley, whose job duties would include handling complaints. Most importantly, he stated that he could not have offered the board any more information than he did at this trial.

As to Engley, although she was not called as a witness, the board agreed to accept the fact that she did not observe plaintiff folding inmate laundry on September 14, 1993. Plaintiff did not articulate any other testimony expected from Engley which would cause the board to reach a finding of not guilty. Since the board unanimously found plaintiff guilty, it is not likely that live testimony from Engley would have changed the board's decision.

Plaintiff argued at the trial, although he did not offer any testimony, that he also wanted to call as witnesses many of the inmates on Prudence I whose folded laundry was observed by Lt. Viveiros. No other person present at the hearing testified as to this request from plaintiff. Even if plaintiff made such a request, it is difficult to understand why these inmates would be called when none identified plaintiff as the person who folded their laundry. Also, as stated, the board, even if so requested, had the discretion to refuse witnesses when calling them could create a disruption. Certainly, calling numerous inmates would create a potential disruption in moving inmates from their cells to the hearing room. After review of the testimony however, I do not believe that plaintiff made this request to the board. Therefore, I am satisfied that the board had valid reasons for not calling plaintiff's requested witnesses and those reasons have been expressed during this trial. Plaintiff's due process rights on this issue were not violated by the board.

### E. *Right to Impartial Hearing Board*

Plaintiff contends that his due process rights were violated in that Lt. Viveiros introduced at the hearing evidence of an investigation he conducted with inmates at Prudence I. Specifically, Lt. Viveiros is alleged to have stated at the hearing that one week prior thereto he had gone to Prudence I and there observed inmates receiving special laundry. When he asked the inmates who

folded the laundry, none would respond and certainly no inmate identified plaintiff as the one who folded his laundry.

■ A basic right of any person who is a defendant at a hearing charging him with wrongdoing is to have a fair, impartial and neutral decisionmaker. *Redding v. Fairman,* 717 F.2d 1105, 1112–13 (7th Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). The issue here is whether Lt. Viveiros' comments at the hearing concerning Prudence I disqualified him from a decisionmaker role. Lt. Viveiros testified that approximately one week prior to the hearing he observed special laundry delivered to inmates in Prudence I. At the hearing, he asked plaintiff if he had any knowledge of this, and plaintiff replied in the negative. Lt. Viveiros also testified that in reaching his decision, he did not rely on any observation at Prudence I but relied only on Officer Alden's testimony and the list of cell numbers.

In support of his contention, plaintiff directs my attention to three cases, including *Merritt v. De Los Santos,* 721 F.2d 598 (7th Cir.1983). None are apposite and a discussion of the *Merritt* decision will so demonstrate.

In *Merritt,* plaintiff, an inmate, sued defendant who acted as a member of the disciplinary committee. Plaintiff alleged his due process rights were violated, because defendant denied him an impartial disciplinary committee. Plaintiff and a guard were involved in an altercation. Thereafter, defendant, the Command Officer, came to plaintiff's cell. Defendant ordered plaintiff be handcuffed, removed and the cell searched. A struggle followed, but the search was completed. A disciplinary report was prepared charging plaintiff with several violations which occurred prior to defendant's arrival at plaintiff's cell. A guard and defendant prepared an incident report describing defendant's involvement upon · his arrival and events that occurred before his arrival, including the fact that a guard was injured. A disciplinary hearing was held subsequently, and defendant was a member of the panel. Plaintiff objected to defendant's participation, but de-

fendant remained on the panel. Plaintiff was found guilty. *Id.* at 600.

The lower court found that plaintiff was denied his right to an impartial decisionmaker. The Appeals Court affirmed on the basis that defendant had investigated earlier events to complete his incident report and thereby disqualified himself from service on the disciplinary panel. *Id.* at 602.

The court stated that:

the requirement of impartiality mandates the disqualification of an official who is directly involved in the incident or is otherwise substantially involved in the incident but does not require the disqualification of someone tangentially involved.

*Id.* at 601.

Here, Lt. Viveiros' involvement was at best tangential. There is no evidence in this record to show he was conducting an investigation on Prudence I or even when he was present on Prudence I. By his own admission, nothing he learned on Prudence I connected plaintiff to the folded inmate laundry. Plaintiff never objected at the hearing to Lt. Viveiros' participation on the board. I do not find that the Prudence I visit disqualified Lt. Viveiros from chairing plaintiff's disciplinary board. I do find Lt. Viveiors' testimony to be credible. Even if Lt. Viveiros' participation in the hearing and his vote is ignored, two other members of the board voted guilty and the record is devoid of any evidence that they relied therefor upon any statement by Lt. Viveiros. Consequently, plaintiff has failed to show that his hearing was not conducted by three neutral and detached decisionmakers.

### F. *Appeal to Warden Whitman*

The *Morris* Rules provide for review of a disciplinary board's decision. *Morris v. Travisono,* 499 F.Supp. at 170–171. Here, the board's decision was reviewed by Warden Whitman, and he approved the board's action. Plaintiff contends that Warden Whitman also violated his due process rights by denial of plaintiff's appeal. Since I have found that the proceedings before the disciplinary board did not violate plaintiff's due process rights, the denial of plaintiff's appeal

also did not violate these rights. Warden Whitman's review did not violate any due process rights secured to plaintiff by the United States Constitution.

### G. Claims Against Director Vose

■ Director Vose is a party defendant only because he is the Director of DOC. There is no evidence in this record to show any personal action by Vose either during the proceedings before the disciplinary board or the review process. It is clear that Vose is sued under the theory of *respondeat superior,* that he is responsible for the activities of the two other defendants. However, it is well established that the concept of *respondeat superior* is inapplicable in § 1983 cases. *Gutierrez–Rodriquez v. Catagena,* 882 F.2d 553, 562 (1st Cir.1989). The standard for supervisory liability in § 1983 cases is "reckless or callous indifference to the constitutional rights of others" which has not been proven here. *Id.* Additionally, I have not found any breach of plaintiff's constitutional rights by the other defendants.

### H. The Decision of the Disciplinary Hearing Board

The *Morris* Rules require that a board's decision be based on substantial evidence in the record which record shall include (1) a summary of all information produced at the hearing including testimony of witnesses, testimony of any unidentified informant and the written summary investigation report; (2) physical evidence viewed; (3) findings of fact and supporting reasons for the board's disposition; and (4) rationale for any change made in the board's disposition upon review. *Morris v. Travisono,* 499 F.Supp. at 171.

The United States Supreme Court has stated that the findings of a prison disciplinary board must be supported by "some evidence" in the record. *Superintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985). The *Morris* Rules require the disciplinary board's decision to be based on "substantial evidence" in the record. The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v.*

*Federal Maritime Comm.,* 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). "This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* at 620, 86 S.Ct. at 1026.

The question does arise whether the more stringent *Morris* Rules standard should be applicable rather than the due process requirement of "some evidence." I need not decide this issue as I find there is substantial evidence in this record to support the disciplinary board's finding of guilt.

Here the record of the board, while sparse, does conform to the *Morris* Rules. However, in the future, disciplinary boards would be well advised to include more information in the record including witnesses requested by inmates and a summary of their testimony or the reason why they were not called. Also, all panel members should sign the report, indicating which, if any, dissent from the board's action.

■ I find that the board's decision in this matter is based on substantial evidence. Officer Alden did observe Wilson with folded inmate laundry other than his own. This was a clear violation of prison policy known to be so by Wilson and plaintiff. At the same time Wilson was observed with special laundry which was confiscated, plaintiff was observed to discard a seemingly empty cigarette pack on the dock outside the laundry room. A list of cell numbers was found in the empty cigarette pack which list corresponded to the cell numbers on the confiscated bags of folded inmate laundry. Clearly an inference then arose that there was a relationship between the list and the folded laundry which implicated plaintiff. The board had a right to conclude plaintiff was involved in a scheme to fold inmate laundry contrary to existing and known prison policy. This is substantial evidence notwithstanding plaintiff's unsupported explanation that the list contained only cell numbers of complainants and was to be delivered to Deputy Warden Leach. One can quickly conclude that the

list would not have been discarded if it was legitimately prepared for Deputy Warden Leach and certainly would not have been discarded at or about the same time that folded inmate laundry was discovered and confiscated in the laundry room.

This board's report does comply with the *Morris* Rules.

### Conclusion

For all of the foregoing reasons, I find that plaintiff's due process rights were not violated by any defendant. Judgment is entered for the defendants.

So ordered.