**Ronald L'HEUREUX**

v.

**STATE of Rhode Island DEPARTMENT OF CORRECTIONS, George Vose, Jr. et al. Defendants–Petitioners.**

No. 95–590–M.P.

Supreme Court of Rhode Island.

March 25, 1998.

Ronald L'Heureux, Pro Se.

Ralph Parent, for Plaintiff.

Elizabeth A. Wallace, Thomas A. Palombo, Michael B. Grant, Pawtucket, David J. Gentile, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on a petition for certiorari filed on behalf of the State of Rhode Island, the Department of Corrections, and its director, seeking to review a partial summary judgment entered in the Superior Court on October 12, 1995. In essence the partial summary judgment held that the provisions of the Rhode Island Administrative Procedures Act, G.L.1956 chapter 35 of title 42, (APA or act), were applicable to judicial review of disciplinary and classification proceedings at the Adult Correctional Institutions. The partial summary judgment also held that the provisions of the act, were applicable to the promulgation, amending, or repealing of agency rules or policy of the Department of Corrections (DOC). Upon consideration of the briefs filed by the parties and their oral arguments, we conclude that the provisions of the act referred to by the Superior Court are not applicable either to review of disciplinary and classification hearings or to determinations or the promulgation of rules insofar as they deal with the internal administration of the DOC. The facts and travel of this case insofar as pertinent to our review of the Superior Court judgment are set forth below.

## Facts and Travel

This case was commenced by Ronald L'Heureux (respondent), an inmate of the Adult Correctional Institutions (ACI), who was incarcerated as a result of a conviction of the crime of manslaughter. This action brought by respondent alleged a number of violations of his constitutional rights and also violation of rights that he claimed to have had conferred upon him by a highly structured body of rules that were initially established pursuant to a consent decree entered in *Morris v. Travisono*, 310 F.Supp. 857 (D.R.I.1970) (*Morris I*). This case arose out of civil-rights litigation brought under the provisions of 42 U.S.C. § 1983 in the Federal District Court of Rhode Island, and resulted in the promulgation of the *Morris* rules. *Id.* at 857.

The *Morris* rules were later modified and reissued as part of a permanent injunction issued in *Morris v. Travisono*, 373 F.Supp. 177 (D.R.I.1974) (*Morris II*), aff'd, *Morris v. Travisono*, 509 F.2d 1358 (1st Cir.1975) (*Morris III*) and further modified in *Morris v. Travisono*, 499 F.Supp. 149 (D.R.I.1980) (*Morris IV*). The rules promulgated pursuant to *Morris IV* are still in effect at the ACI and were in force at the time of this litigation.

In the course of respondent's action in the Superior Court the issues were narrowed from his wide-ranging allegations of violation of his constitutional rights under the due-process clause of the Fourteenth Amendment and those rights conferred by the *Morris* rules to two narrow issues upon which partial summary judgment was granted.

These issues were whether the provisions of the APA as set forth in chapter 35 of title 42 are applicable to the review of disciplinary and classification proceedings at the ACI, and whether the APA governs the promulgation of rules or regulations relating to the internal administration of the ACI. The resolution of these issues does not require this court to consider the numerous allegations made by respondent on their merits. It deals only with the procedural framework upon which the Superior Court may review actions by the state and by the DOC and its supervising of the activities of inmates at the ACI, including disciplinary and classification proceedings and the promulgation of rules for internal governance.

The trial justice in this case was faced with a long and tortuous procedural history relating to the *Morris* rules. Previous actions by the DOC, by the federal courts, and by this court presented confused and overlapping patterns of jurisdiction and enforcement. In the face of this somewhat confusing picture the trial justice felt constrained to determine

that the APA was applicable to the review of disciplinary and classification proceedings as well as to the promulgation of rules of internal governance. He based his determination upon the following undisputed events.

In the first instance the *Morris* rules were issued by the Director of the Department of Social Welfare for Corrections purportedly pursuant to the APA. Later, after the opinion of the Court of Appeals for the First Circuit in *Morris III*, a consent decree was entered in the Superior Court in the case of *Jefferson v. Moran,* C.A. No. 85–5003, on December 12, 1985, in which the parties purported to agree to comply with the provisions of the APA in respect to rule making and the internal governance of the ACI.

Moreover, the trial justice cited this court's decision in *Jefferson v. Moran,* 479 A.2d 734 (R.I.1984), in which we declined to answer a question certified by the Federal District Court of Rhode Island concerning whether certain operational memoranda issued by the DOC were subject to the notice and hearing requirements of the APA. We declined to answer the question on the ground that we were of the opinion that the Federal District Court pursuant to *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), did not have jurisdiction to determine whether state officers have failed to comply with state law by reason of preclusion from such jurisdiction by the Eleventh Amendment to the Constitution of the United States. *Jefferson,* 479 A.2d at 737–38. The sole issue presented to this court in *Jefferson* was the answer to a certified question. *Id.* at 737. We declined to answer the question. *Id.* at 738. In the course of the opinion, we included a footnote concerning the arguable applicability of § 42–35–3 to certain rules that might involve the public as opposed to inmates. *Id.* at 736 n. 2. This footnote did not purport to decide the issue and merely constituted the recognition of the question in dictum. Consequently the issue of the applicability of the APA to disciplinary and classification proceedings and also to the rule-making function is one of first impression before this court. The trial justice recognized as much in indicating that only this court could clarify this issue in the light of its somewhat unusual and complex procedural background. We agree with the trial justice that this responsibility must be exercised by this court in light of its authority to interpret and apply statutes enacted by the General Assembly.

■ We begin by recognizing that the DOC has not been specifically exempted from the application of the APA by § 42–35–18. *See* § 42–35–1(a) and (b); § 42–35–18. However, in respect to review of disciplinary and classification decisions rendered by the appropriate officials of the ACI, we have not regarded them heretofore as contested cases within the meaning of § 42–35–1(c). Indeed, we have specifically held in *Bishop v. State,* 667 A.2d 275, 277–79 (R.I.1995), that the director of the DOC had unfettered discretion in making classification determinations and that as a consequence no protected liberty interest in such classification determinations existed. A Fourteenth Amendment liberty interest we held "arises only when a state places substantive limits on official discretion, which limits require that a particular 'outcome be reached upon a finding that the relevant criteria have been met.'" *Bishop,* 667 A.2d at 278 (quoting *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 462, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506, 516 (1989)); *see also Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675, 688 (1983). We held that the applicable statutes governing the classification process, §§ 42–56–30, 42–56–31, and 42–56–32, did not establish criteria that would give rise to any statutory inmate liberty interest in the prison-inmate classification system. 667 A.2d at 277–78. We therefore ruled that such decisions were not reviewable by the Superior Court. *Id.* at 279. We stated unequivocally that a prisoner could not "transpose the Superior Court into an appellate prison-inmate classification board." *Id.* We recognize that in *Bishop* the prisoner had sought to invoke the jurisdiction of the Superior Court by a postconviction application. Nevertheless, our analysis would lead inexorably to the determination that the Superior Court could not be transformed into an appellate tribunal under the APA to accomplish the same purpose.

Since our decision in *Bishop, supra,* the Supreme Court of the United States has decided the case of *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which decision has limited the scope of constitutional challenge inmates may bring concerning the determination of disciplinary proceedings within state correctional institutions. In *Sandin* a prisoner had brought a civil rights action against prison officials and the State of Hawaii in which he challenged the imposition of thirty days of disciplinary segregation for alleged misconduct. *Id.* at 475–76, 115 S.Ct. at 2295–96, 132 L.Ed.2d at 424–25. Writing for a majority of the Court, Chief Justice Rehnquist indicated that the decision in *Hewitt v. Helms, supra,* had produced at least two undesirable effects. *Id.* at 482, 115 S.Ct. at 2299–2300, 132 L.Ed.2d at 428–29. First, it created a disincentive for states to codify prison-management procedures in the interest of uniform treatment in order to avoid creating Fourteenth Amendment liberty interests. *Id.* Second, the Court suggested that the *Hewitt* approach had led to the involvement of federal courts in the day-to-day management of prisons often squandering judicial resources with little offsetting benefit to anyone. *Id.* The Court went on to say that discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law. *Id.* at 485, 115 S.Ct. at 2301, 132 L.Ed.2d at 431. The Court held that there would be no constitutionally guaranteed liberty interest in discipline proceedings unless the proceedings resulted in an atypical and significant hardship being imposed on the prisoner that would present a dramatic departure from the basic conditions of his or her incarceration. *Id.* at 484–86, 115 S.Ct. at 2300–01, 132 L.Ed.2d at 430–31. The Court held that the state's action in placing the inmate in disciplinary segregation for thirty days did not work a major disruption in his environment. *Id.*

It is notable that under the *Morris* rules imposed by a permanent injunction of the Federal District Court, no punitive segregation in excess of thirty days is allowable. The *Sandin* rationale would indicate that there is no constitutional right to judicial review of such a disciplinary proceeding. Neither our statutory law nor our case law provides for judicial review of such proceedings.

We observe in passing that had *Sandin* been the law at the time of *Morris I,* the Federal District Court might have been hard pressed to find the authority to impose the *Morris* rules in the first place or to entertain the action brought on the ground of violation of the Fourteenth Amendment rights of the prisoners. Nevertheless, the *Morris* rules which constitute a federal construct, enforced eventually by a permanent injunction in *Morris IV,* are binding upon the DOC and are enforceable for violation of such rules by contempt proceedings in the Federal District Court. We must now consider whether the promulgation of the *Morris* rules purportedly in accordance with the APA would also be binding upon the State of Rhode Island in respect to state judicial review under that statute. We conclude that the action was not so binding.

The parties to *Morris I* had no power to amend the statutory law of the State of Rhode Island. Nor could such a power be effectuated by the permanent injunction issued by the Federal District Court in *Morris IV.* Even the consent decree issued by the Superior Court in *Jefferson v. Moran* on December 12, 1985, could not amend the APA to include a limitation on the rule-making power concerning the internal governance of the ACI. In short the APA could be made applicable to disciplinary, classification, and rule-making powers of the DOC only by its own terms and not as a result of consent orders under the aegis of either a federal court or a trial court of this state. We are of the opinion that in the absence of a constitutional or statutory liberty interest, judicial review of such procedures would not be supplied by the provisions of the APA.

Indeed, in respect to the rule-making power of the DOC as it relates to the internal management of the ACI, the statute specifically excludes in § 42–35–1(h) "statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public." Such

rules are specifically excluded from the application of the APA and could not be included by a consent decree or a permanent injunction of a federal court even though the decree and the injunction might be otherwise binding on the parties.

Numerous other jurisdictions that have considered the application of their administrative-procedure statutes to correctional institutions have rejected their applicability. The Court of Appeals for the Ninth Circuit declined to apply the Federal APA to prison disciplinary hearings in *Clardy v. Levi*, 545 F.2d 1241 (9th Cir.1976), even though the Bureau of Prisons had not been specifically excluded from the Federal APA. The court unequivocally held that the Federal APA was not applicable to prison disciplinary proceedings. *Id.* at 1246. Many state courts have reached a similar conclusion. *See, e.g., Rose v. Arizona Department of Corrections*, 167 Ariz. 116, 804 P.2d 845, 849 (App.1991) (holding that inmate disciplinary hearings were not contested cases within the meaning of the Arizona APA); *Langley v. Scurr*, 305 N.W.2d 418, 419 (Iowa 1981) (holding that the APA would be inappropriate for prison disciplinary procedures); *Reed v. Parratt*, 207 Neb. 796, 301 N.W.2d 343, 345 (1981) (holding that the Nebraska APA was not applicable to a prison disciplinary proceeding wherein summary process was more appropriate); *Dawson v. Hearing Committee*, 92 Wash.2d 391, 597 P.2d 1353, 1355 (1979) (holding that the unique nature of prison disciplinary matters would be unsuited to the formal, time-consuming, and adversarial procedures required by the APA).

We are persuaded by the rationale of the foregoing federal and state cases that the intricate structure of our APA provisions relating both to contested cases and to the exercise of the rule-making power would be ill suited to the management of the often volatile population of the ACI.

It is of further interest to observe that in a recent case Chief Judge Lagueux of the Rhode Island District Court, in considering the applicability of the APA to prison disciplinary proceedings, expressed the opinion that the APA procedures were too cumbersome to be used in the day-to-day operations of the ACI and that it is not necessary to give inmates the full panoply of those procedural rights in order to have an effective grievance procedure under the Federal Civil Rights of Institutionalized Persons Act. *Lother v. Vose*, C.A. No. 94–631L (D.R.I. Sept. 11, 1995), *aff'd, Lother v. Vose*, 89 F.3d 823 (1st Cir.1996). We agree with that court's analysis, and in interpreting our APA we are mindful of our responsibility not to interpret a statute in such a manner as to achieve an inappropriate or an unintended result. *See, e.g., Cardarelli v. Department of Employment and Training Board of Review*, 674 A.2d 398, 400 (R.I.1996); *Wayne Distributing Co. v. Rhode Island Commission for Human Rights*, 673 A.2d 457, 460 (R.I.1996); *General Accident Insurance Company of America v. Cuddy*, 658 A.2d 13, 16 (R.I. 1995).

We are of the opinion that the reading of the language of the APA together with our interpretation of the intention of the General Assembly that this statute should be applied in the determination of private and public rights as opposed to the circumstances and conditions of a correctional institution leads inevitably to the conclusion that the APA is not applicable to classification proceedings, disciplinary proceedings, or rule making dealing with the internal affairs of the ACI by the DOC.

For the reasons stated, the petition for certiorari is granted. The partial summary judgment entered in the Superior Court is hereby quashed, and the case is remanded to the Superior Court with our decision endorsed thereon.

BOURCIER, J., did not participate.