Jose DOCTOR

v.

Ashbel T. WALL, et al.[1]

C.A. No. 00–220L.

United States District Court,
D. Rhode Island.

April 24, 2001.

1. Plaintiff also identifies as defendants the following individuals: Vose, Holland, Amaral, Anderson, Whitman, Getter, Yakey, and Aldrich.

Jose Doctor, Cranston, RI, plaintiff pro se.

Patricia Anne Coyne–Fague, Department of Corrections, Cranston, RI, for defendant.

### MEMORANDUM AND ORDER

Lagueux, District Judge.

The attached Report and Recommendation of United States Magistrate Judge Jacob Hagopian, dated February 21, 2001, hereby is accepted and adopted pursuant to 28 U.S.C. § 636(b)(1)(B). A short explanation is necessary.

It should be clear from this Court's decision in *Cugini v. Ventetuolo*, 781 F.Supp. 107 (D.R.I.1992) that an inmate at the Adult Correctional Institutions (ACI) does not have a cause of action in this District Court for contempt against personnel of the Rhode Island Department of Corrections for an alleged violation of the *Morris* Rules. This is so because the *Morris* Rules are not contained in or part of a decree issued by this Court. The *Morris* Rules were regulations adopted by the Rhode Island Department of Corrections under the Rhode Island Administrative Procedures Act pursuant to an agreement with the inmate class in the *Morris* case. Judge Pettine attached a copy of the *Morris* Rules to his Order in *Morris IV* so that the text of those Rules would be published and the terms thereof known to all, but the rules were not integrated into any decree of this Court. In that case, Judge Pettine ordered that the *Morris* Rules remain in effect at the ACI, pursuant to the agreement of the parties in the *Morris* case. But, those Rules are *state* rules and regulations that govern the conduct of classification and disciplinary proceedings at the ACI, and are to be enforced, if at all, by state machinery.

In *L'Heureux v. Dep't of Corrs.*, 708 A.2d 549 (R.I.1998), the Rhode Island Supreme Court concluded that the "contested case" provisions of the Rhode Island Administrative Procedures Act do not apply to classification and disciplinary proceedings at the ACI. Thus, an inmate cannot appeal the results of such proceedings claiming a violation of the *Morris* Rules. That is a matter of state law and within the prerogative of the Rhode Island Supreme Court to decide. However, that Court made the gratuitous statement that a violation of the *Morris* Rules could form the basis of a cause of action for contempt in the United States District Court for the District of Rhode Island. In making that statement, the Rhode Island Supreme Court was clearly mistaken. It obviously was not aware of this Court's decision in

*Cugini,* which was affirmed by the First Circuit Court of Appeals in an unpublished opinion. *See* 966 F.2d 1440. For the text of that opinion, see *Cugini v. Ventetuolo,* No. 92–1092, 1992 WL 144699 (1st Cir. June 26, 1992).

■ The long and short of it is that an inmate at the ACI, who claims that the *Morris* Rules were violated by personnel at the ACI, must make an allegation of a federal constitutional violation and bring an action under 42 U.S.C. § 1983 in order to be heard in this Court.

■ Since this plaintiff has not stated a cause of action under § 1983 of federal constitutional dimension, this case must be dismissed. The Clerk shall enter judgement for all defendants forthwith.

It is so ordered.

HAGOPIAN, United States Magistrate Judge.

### Report and Recommendation

The *pro se* plaintiff, Jose Doctor, has filed a Complaint, styled as a "Motion to Adjudge Defendants' in Contempt," in which he alleges that the defendants have failed to comply with the so called *Morris* rules, established by an agreement of the parties in *Morris v. Travisono,* 310 F.Supp. 857 (D.R.I.1970). In his Motion for Contempt, the plaintiff avers that the defendants have failed to comply with the dictates of the *Morris* rules with respect to classification and disciplinary procedures at the Adult Correctional Institution ("ACI").

Presently before the Court is the motion of the defendants for summary judgement, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants assert that are no genuine issues of material fact and that the *Morris* rules have been complied with. The plaintiff has objected to the instant motion.

This matter has been referred to me for review and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, I recommend that the instant action be dismissed for lack of subject matter jurisdiction. Since there is a lack of subject matter jurisdiction, the defendants' motion for summary judgement should be denied as moot. I have determined that a hearing is not necessary.

### I. BACKGROUND

In his motion to adjudge in contempt, plaintiff complains of alleged deficiencies in the procedures used in his classification process and in disciplinary proceedings conducted against him at the ACI. The factual basis for his claim is as follows:

A Superior Court jury convicted the plaintiff of a number of charges, including murder, following a shooting in Providence. Following his conviction, the court sentenced the plaintiff accordingly, and ordered him to serve his sentences at the ACI. After his conviction, plaintiff was housed in the high security unit, "A" category.

Thereafter, the Rhode Island Supreme Court overturned the plaintiff's conviction and remanded the case back to the Superior Court for a new trial. During this time, plaintiff was transferred from the high security unit to the intake center.

Following another trial, a jury convicted the plaintiff of murder and other related offenses. The court then sentenced the plaintiff accordingly, and ordered him to serve his sentences at the ACI.

When he returned to the ACI following his second conviction, the plaintiff appeared before a classification board, which recommended that the plaintiff be classified to the high security unit, "A" category. The then director of the ACI,

George Vose, rejected that recommendation and instructed the classification board to reconsider their recommendation. Thereafter, the board reconsidered plaintiff's classification, and recommended a "C" category. Plaintiff asserts that Director Vose's refusal to adhere to the classification board's recommendation violated the so called *Morris* rules. This occurred no later than June 28, 1995.

Plaintiff, in his motion to adjudge in contempt, also complains of the procedures used with respect to disciplinary proceedings conducted against him on May 15, 1998, at the ACI. Plaintiff alleges that he was charged with conspiracy to commit an assault on a correctional officer and committing an overt mutinous act. Following a guilty finding by the disciplinary board, the plaintiff was ordered to serve thirty days in punitive segregation.

Plaintiff asserts that the defendants violated eight provisions of the *Morris* rules during the disciplinary proceedings with respect to the above charge by (1) denying him the right to have a superior officer conduct a preliminary investigation; (2) denying the plaintiff the right to have the superior officer make a written summary of his investigation; (3) denying the plaintiff notice of the disciplinary hearing; (4) failing to give the plaintiff written notice that the statements the plaintiff makes at the hearing may be used against him in subsequent criminal proceedings; (5) failing to comprise the disciplinary board of the proper personnel; (6) failing to present substantial evidence at the disciplinary hearing; (7) failing to charge the plaintiff with a "punishable conduct;" and (8) failing to provide him with the requisite time to file an appeal of the disciplinary board's decision.

Plaintiff seeks to have the defendants held in contempt of the *Morris* rules. Plaintiff seeks restoration to "A" classification status and to have the disciplinary reports filed against him rescinded. However, this court lacks subject matter jurisdiction to entertain such claims. My reasoning follows.

## II. HISTORY OF THE MORRIS RULES

■ The *Morris* rules were conceived of in a time of great "turmoil" in the history of the Adult Correctional Institution. *Cugini v. Ventetuolo*, 781 F.Supp. 107 (D.R.I. 1992). In addition to establishing procedures for the classification and discipline of inmates at the ACI, the *Morris* rules spell out privileges and restrictions for each classification, establish minimum conditions of confinement, and enumerate those inmate actions that constitute punishable conduct. *Id.* at 109. The *Morris* rules came to be in the following manner:

On September 27, 1969, twenty three inmates were segregated without notice or a hearing and placed in the Behavior Control Unit ("BCU") at the ACI. *Cugini* at 109. The BCU was a secure facility within the ACI. *Id.* These inmates were not permitted to bring any personal articles with them, nor were they given any personal hygiene materials, nor were they permitted to shower for two weeks. *See id.* They were also not permitted to speak to their attorneys until October 3, 1969. *Id.*

On September 28, 1969, the segregated inmates began a food strike after their water was shut off. *Id.* Food trays piled up in their cells, and the inmates responded by throwing them, and other waste products into the hall, creating an unhealthy situation. *Id.* After being permitted to shower, most of the inmates cleaned up their areas. *Id.* One area of the BCU occupied by six men was ordered to clean its area before being permitted to shower. *Id.* These six inmates refused to do so, and stand off began between the administra-

tion and the inmates, which resulted in unsanitary conditions. *Id.*

On October 11, 1969, the Rhode Island Legal Services filed a civil action on behalf of John Morris, and other inmates housed in the BCU unit. *Cugini* at 109. The complaint included an application to enjoin the prison administration from keeping the twenty three inmates in the BCU, where filthy conditions allegedly amounted to a violation of the Eighth amendment prohibition against cruel and unusual punishment. *Id.*

Formal hearings commenced on Monday, October 13, 1969. *Id.* The Court found that the allegations constituted violations of the Eighth, Fifth and possibly Sixth amendments to the U.S. Constitution. *Cugini*, at 109. The parties then began negotiations to come to a resolution of the matter. *Id.* While the negotiations continued, the Complaint was amended into a class action. The Amended Complaint also asserted that the classification and disciplinary procedures then in use were unconstitutional. *Cugini*, at 110.

In January, 1970, following extended negotiations, the parties submitted to the Court a draft of proposed "Regulations Governing Disciplinary and Classification Procedures at the Adult Correctional Institutions, State of Rhode Island." *Id., citing Morris I*, 310 F.Supp. at 865. Several of the inmates objected to the rules. *Id.* After carefully reviewing all of the inmates objections, the court, on March 11, 1970, issued a Memorandum and Order in which it detailed the proceedings and addressed the inmates' objections. *Id.* The Court stated that the proposed rules were to become part of an interim consent decree issued that same day by the Court, over which the Court would retain jurisdiction for eighteen months. *Id.* This eighteen month gestation period would allow the parties to effectuate the rules and

make any necessary alterations before the Court issued its final decree. *Id.*

Various amendments to the rules were submitted to the Court and approved during the eighteen month period. *Id.* On April 20, 1972, the Court entered its final decree, declaring that the inmate class was "entitled to those minimum procedural safeguards with respect to classification and discipline as are set out in the [*Morris* rules]" *Id., quoting Morris v. Travisono*, No. 4192 (D.R.I. April 20, 1972)(final decree). Rather than issuing an injunction, the Court stated in its decree that the prison administration agreed to promulgate the *Morris* rules pursuant to the Rhode Island Administrative Procedures Act ("APA") within ninety days to give them force and effect. *Id.* On October 10, 1972, three years after the commencement of the civil action, the prison administration filed the rules with the Rhode Island Secretary of State. *Id.* "Thus the *Morris* rules came to life, but their existence was far from assured." *Id.*

On June 22, 1973, the prison administration unilaterally suspended the *Morris* rules following a series of troubling events including a prison riot, the murders of an inmate and a correctional guard, the discovery of an escape plot, and the appointment of a new warden. *Cugini* at 110. Seventeen inmates were segregated into the BCU unit without a hearing. *Id.* The prison returned to normal by late November 1973, but the *Morris* rules were not reinstated. *Id.*

On December 10 and 12, 1973, Judge Pettine of this Court heard arguments on the inmates' Motion for Further relief seeking an injunction based upon the Court's final decree of April 20, 1972. *See Morris II,* 373 F.Supp. 177. The Court determined that the state of emergency had ended on July 5, 1973, but the prison administration had deliberately not rein-

stated the *Morris* rules, thereby denying the inmates their procedural due process rights. *Id.* at 180–181. Whereas the emergency provisions of the *Morris* rules had been designed to deal with such a situation, the administration had operated completely outside the scope of the rules and had failed to reinstitute procedural due process safeguards as soon as possible following the restoration of order and safety. *Id.* at 181–182. Because the administration had failed to seek relief from the April 20, 1972 decree before unilaterally suspending the rules, Judge Pettine of this Court permanently enjoined the prison from suspending the rules in the future. *Id.* at 184. The First Circuit affirmed the injunction on appeal. *Morris v. Travisono,* 509 F.2d 1358 (1st Cir.1975) (*Morris III*).

In 1980, Judge Pettine of this Court reaffirmed the vitality of the *Morris* rules in *Morris IV,* 499 F.Supp. 149. An inmate segregated in the BCU had brought an action pursuant to 42 U.S.C. § 1983 and a motion to adjudge the prison administration in civil contempt for violating the *Morris* rules. The prison officials countered with a motion to vacate their agreement to comply with the *Morris* rules in light of certain changes in circumstances at the ACI and in the case law. The Court determined that continued enforcement of the *Morris* rules would not result in a grievous wrong to the prison administration and remained necessary to effectuate the goals of the final decree. Therefore, the Court denied the motion to vacate their agreement and ordered the prison administration to comply with the *Morris* rules.

Thereafter, in *Cugini v. Ventetuolo,* 781 F.Supp. 107 (1992), District Judge Ronald R. Lagueux of this Court considered an action brought by a state prison inmate in which the inmate sought to adjudge the prison administration in contempt of the so called *Morris* rules. In *Cugini,* Judge Lagueux found that a state prisoner "alleging violations of the *Morris* rules or seeking enforcement of those rules properly belong in state court because the rules were promulgated under state law and were meant to be dealt with by state machinery." Thus, Judge Lagueux dismissed the action for lack of subject matter jurisdiction. Thereafter, actions brought for alleged violations of the *Morris* rules were remanded to the state courts for determination.

However, in 1998, the legal landscape seemingly changed with respect to the *Morris* rules. In *L'Heureux v. Department of Corrections,* 708 A.2d 549 (R.I. 1998), the Rhode Island Supreme Court found that the parties to *Morris I* had no power to amend the statutory law of the state of Rhode Island, and thus excluded the *Morris* rules promulgated under the Rhode Island Administrative Procedures Act. The supreme court found that "[i]n short the APA could be made applicable to disciplinary, classification, and rule making powers of the DOC only by its own terms and not as a result of consent orders under the aegis of either a federal court or a trial court of this state." *Id* at 552. The *Morris* rules were no longer a part of the APA, as agreed to by the parties in *Morris I.*

Now, prisoners at the ACI, such as the plaintiff in this instant action, who seek relief under the so called *Morris* rules are filing motions for contempt here, in the U.S. District Court. Essentially, inmates at the ACI are attempting to turn the U.S. District Court into an appellate review board for classification and disciplinary procedures at the ACI established under *Morris* rules. However, for the reasons set forth below, this court lacks subject matter jurisdiction to entertain such claims brought under the so called *Morris* rules.

## III. DISCUSSION

### A. Morris Rules Violations.

 Federal courts are courts of limited jurisdiction. Here, plaintiff attempts to gain access to this court pursuant to 28 U.S.C. § 1331, the federal question jurisdiction. However, no federal question exists, and no contempt action may lie for individual violations of the *Morris* rules, since the *Morris* rules are meant to be dealt with under state law. I will explain.

In *Morris I*, this Court issued a interim decree which embodied a version of the *Morris* rules. The Court in *Morris I* retained jurisdiction for eighteen months, in which enforcement could be sought on that interim decree. On April 20, 1972, the Court entered its final decree, declaring that the inmate class was "entitled to those minimum procedural safeguards with respect to classification and discipline as are set out in the [*Morris* rules]." *Morris v. Travisono*, No. 4192 (D.R.I. April 20, 1972)(final decree). Rather than issuing an injunction, the Court stated in its final decree that the state prison administration agreed to promulgate the rules pursuant to the Rhode Island APA. On October 10, 1972, the prison administration complied, and filed the official version of the *Morris* rules with the Rhode Island Secretary of State.

Thereafter, in *Morris II*, this Court issued an injunction enjoining the prison administration from suspending their agreement to comply with the *Morris* rules in the future. *Morris II*, 373 F.Supp. 177 (D.R.I.1974). That injunction was affirmed by the First Circuit. *Morris III*, 509 F.2d 1358 (1st Cir.1975).

In *Morris IV*, Judge Pettine of this Court denied a motion to vacate the order directing the prison administration to comply with *Morris* rules. The Court determined that continued enforcement of the *Morris* rules would not result in a grievous wrong to the prison administration and remained necessary to effectuate the goals of the final decree.

In 1992, Judge Lagueux found that in actions alleging "violations of the *Morris* rules or seeking enforcement of those rules properly belong in state court because the rules were promulgated under state law and meant to be dealt with by state machinery." *Cugini* at 112–113. In sum, in *Cugini* this Court declared that a violation of the *Morris* rules was actionable in the state's jurisdiction and not in the federal system. Accordingly, Judge Lagueux dismissed the action for lack of subject matter jurisdiction.

In the present action, Jose Doctor seeks to hold the prison administration in contempt of the *Morris* rules. However, no action for contempt may lie for violations of those rules in the U.S. District Court since those rules were meant to be dealt with by "state machinery." *Id.* Accordingly, the instant action should be dismissed for want of subject matter jurisdiction.[2]

### B. Constitutional Claims under 42 U.S.C. § 1983.

 Despite Doctor's assertions that this instant action is a motion to adjudge in contempt, he has made allegations of a

---

2. This Court is aware of the Rhode Island Supreme Court's ruling in *L'Heureux v. Department of Corrections*, 708 A.2d 549 (R.I. 1998). There, the R.I. Supreme Court stated that actions for violations of the *Morris* rules properly belong in the Federal Court. *Id.* at 552. As stated above, this Court respectfully disagrees, and finds that this court lacks subject matter jurisdiction to entertain such claims which are not of a constitutional dimension. Perhaps the Rhode Island Supreme Court was unaware of this Court's holding in *Cugini v. Ventetuolo*, 781 F.Supp. 107 (D.R.I. 1992).

constitutional nature. Assuming that Doctor has attempted to plead a violation of his Constitutional rights in an action brought pursuant to 42 U.S.C. § 1983, his claims should still fail.

### 1. 42 U.S.C. § 1983 and Plaintiff's Classification Procedure Claims.

Plaintiff, in his motion to adjudge in contempt, complains that the procedures used in his classification process, occurring between April 25, 1995 and June 28, 1995, were deficient. Assuming that the plaintiff is attempting to assert a constitutional claim under 42 U.S.C. § 1983, his claim would be based on the Fourteenth Amendment due process clause. However, such a claim would be time barred.

■ A state's personal injury statute of limitations applies in actions brought under 42 U.S.C. § 1983. *See Owens v. Okure*, 488 U.S. 235, 239, 109 S.Ct. 573, 576, 102 L.Ed.2d 594 (1989); *Wilson v. Garcia*, 471 U.S. 261, 279–80, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Rhode Island's general personal injury statute of limitations is three years. *See* R.I. Gen. Laws 9–1–14. Thus, a three year statute of limitation applies to plaintiff's claims in this case.

Here, the conduct of which plaintiff complains with respect to his classification procedures occurred no later than June 28, 1995. Thus, plaintiff had three years, or until June 27, 1998, to file the instant action. He did not do so. The instant action was filed on May 5, 2000. Accordingly, if plaintiff choose to pursue an action pursuant to 42 U.S.C. § 1983 under the Fourteenth Amendment with respect to his classification procedure claim, the action would be time barred.

### 2. 42 U.S.C. § 1983 and Plaintiff's Disciplinary Procedure Claims

■ Plaintiff, in his motion to adjudge in contempt, complains that the procedures that were used in his disciplinary proceedings that occurred on May 15, 1998, were deficient. Again, assuming plaintiff is attempting to assert a constitutional claim under 42 U.S.C. § 1983, his claim would be based upon the Fourteenth Amendment's due process clause. However, such a claim would fail, as his allegations do not rise to the level of a constitutional violation.

■ Here, plaintiff complains of eight alleged deficiencies in disciplinary proceedings that were conducted against him. However, in order to rise to the level of a due process violation, those disciplinary proceedings must have resulted in a deprivation that was "atypical" and "significant" in the ordinary instances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). In *Sandin*, as here, the plaintiff asserted that as a result of the disciplinary proceedings, he was placed in punitive segregation for thirty days. *Id.* However, the Supreme Court rejected the argument that a thirty day segregation violated the due process clause, since the segregation did not present an "atypical" and "significant" deprivation in the ordinary incidents of prison life. *See id.*

Accordingly, plaintiff's claim for a violation of the due process clause should fail since the thirty day segregation here was a regularly accepted disciplinary practice at the ACI and, as in *Sandin*, was not "atypical" and "significant." Thus, the instant action should be dismissed.

### IV. CONCLUSION

Accordingly, for the reasons stated above, I recommend that the instant action be dismissed for want of subject matter jurisdiction. Since there is no subject matter jurisdiction, the defendants' motion

for summary judgement should be denied as moot.

Any objection to this report and recommendation must be specific and must be filed with the clerk of the court within ten days of receipt. Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Company*, 616 F.2d 603 (1st Cir.1980).