DECISION
Before the Court is the petition of plaintiffs Paul A. Desrosiers, et al. ("Desrosiers") for declaratory judgment. Defendant Rhode Island Public Utilities Commission Division of Motor Carriers ("Division") moves this Court to deny Desrosiers' motion and to dismiss all claims against them pursuant to Rules 12(b)1) and 12(b)(6). Jurisdiction is pursuant to R.I.G.L. 1956 § 42-35-7.
 FACTS AND TRAVEL
Plaintiffs are Rhode Island taxicab drivers who lease taxicabs from owners of taxi certificates issued by the defendant Division. Plaintiff taxicab drivers are thus subject to the rules and regulations of the Division. Taxicab drivers who work in Providence are members of the Providence Taxicab
Association ("PTA"). Plaintiff Desrosiers purports to act as spokesperson for PTA. On July 17, 1999, defendant, published notice in The Providence Journal of the Division's intention to amend its Rules and Regulations Governing the Transportation of Passengers Via 1 Taxicabs and Limited Public Motor Vehicles ("Rules"). The Rules had been in effect since February 11, 1996.
The notice announced a hearing date of August 16, 1999, as well as the time and place of the hearing. The purpose of the hearing was to provide interested parties, such as individuals holding or subject to taxi operation certificates, an opportunity to comment on the proposed amendments. The notice provided a general description of the proposed amendments, including specifically a proposed rule that would eliminate the then existing waiver provision with respect to older taxicabs and limited public motor vehicles. This waiver had been used in the past to keep otherwise non-compliant vehicles in service. The proposed elimination of waivers would mandate the retirement of some older vehicles and could result in additional costs for certificate holders and/or taxicab drivers. The notice of the hearing also provided instructions on how members of the public could examine the newly proposed rules. In addition to the published notice, individual notice was mailed to each taxicab and limited public motor vehicle certificate holder of record.
The hearing began, as scheduled, on August 16, 1999, before Hearing Officer, John Spirito ("Spirito"). Appearances were entered on behalf of the Division's Advocacy Section, for the Taxi Owners Association of Rhode Island ("Association") and for Airport Taxi ("Airport"). Eight witnesses, all of whom appeared to be certificate holders, were present to testify. At that time, counsel for the Association moved for a delay in the issuance of a decision by the Division on the proposed rule changes until the Association could meet with the Division's Advocacy Section in a working session to try to resolve any issues regarding the newly proposed rules that were in dispute among the parties. The motion was granted, and the proceedings were continued indefinitely.
Eight months later on April 13, 2000, the Division and the Association notified Spirito that a settlement agreement had been reached by the parties to the working sessions. They presented Spirito with a draft of a complete compilation of their proposed rules. Plaintiff Desrosiers contends that in May, 2000 he requested of the Division written notice of any future hearings on the proposed rule changes.
Recognizing that the newly proposed rules were significantly different from the initially proposed changes, the Division decided to reconvene the hearing on June 29, 2000 to give interested persons an opportunity to be heard on the proposed changes. The Division renoticed the hearing on June 19, 2000 in The Providence Journal. The notice described the changes in the proposed actions and again, set forth the time and place of the hearing.
The hearing reconvened on June 29, 2000. Counsel was present for the Division as was counsel for the Association, but counsel for Airport did not enter an appearance. Both a copy of the comprehensive set of rules proffered by the Division and the Association, as well as a redacted copy, outlining the differences between the newly-proffered rules and the originally proposed rules, were made part of the record.
At least eleven witnesses, including plaintiff Desrosiers, on behalf of PTA, testified in opposition to the proposed rule changes. Some industry members objected to the proposed rules due to what they claim would pose new restrictions and financial strain on the taxicab owners and drivers.
The Division rendered its decision on September 1, 2000. The new rules were effective on September 21, 2000. The decision included an extensive discussion of the testimony considered by Spirito. It specifically addressed each objection raised to the proposed rules. It explained the rationale for the eventual findings regarding each proposed change before adopting a modified version of the rules agreed upon and proffered by the Division and the Association. The decision afforded each certificate holder and/or taxicab driver six months from the effective date to comply with the new rules. It further provided that any person needing more time to comply could apply for an extension.
On September 21, 2000, the same day that the new rules became effective, plaintiff Desrosiers filed a Motion to Reconsider with the Division. His motion was denied the following day. Plaintiff filed his original appeal in the Superior Court on September 29, 2000. On October 14, 2000, Desrosiers signed a lease with Walsh Cab ("Walsh") to operate one of its cabs, under that company's certificate. Walsh's certificate was in compliance with the new rules. The Court notes that the relationship between Desrosiers and Walsh commenced just fifteen days after plaintiff had filed his appeal in Superior Court challenging the new rules under which he subsequently agreed to be bound as per Walsh's certificate. On February 23, 2001, plaintiffs filed a motion to amend their complaint in order to seek a declaratory judgment pursuant to R.I.G.L. § 42-35-7, rather than judicial review of a contested case under R.I.G.L. § 42-35-15(a).
 STANDARD OF REVIEW
R.I.G.L. § 42-35-15(a) authorizes "any person who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case" to seek judicial review of that order. Pursuant to R.I.G.L. § 42-35-15(c), the court has authority to order a stay of enforcement of a contested order. A "contested case" is defined in R.I.G.L. § 42-35-1 (c) as "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." Id. Although the scope of the definition is not limited to the specific types of proceedings mentioned in the statute, the statutory section is limited on its face to cases that remain contested after all administrative remedies are exhausted.
For a case to be considered "contested," the definition requires "an opportunity for hearing." R.I.G.L. § 42-35-1 (c); Pine v. Clark,636 A.2d 1319 (R.I. 1994). Rulemaking is not specifically listed under the definition of contested case, and the Rhode Island Supreme Court has consistently held that rulemaking hearings are not contested proceedings under the Rhode Island Administrative Procedures Act. L'Heureux v. State Dep't of Corrections, 708 A.2d 549 (R.I. 1998). Rather, a party challenging a rulemaking proceeding should do so by means of a declaratory judgment pursuant to R.I.G.L. § 42-35-7. Id.
The Uniform Declaratory Judgment Act prescribes wide discretion to the court to grant declaratory judgment in either an affirmative or negative form where such declaration would have the effect of a final judgment and "terminate [a] controversy or remove an uncertainty." R.I.G.L. §9-30-5; R.I.G.L. § 9-30-1. The Act further grants discretion to the court to deny declaratory judgment where the decree would not "terminate the uncertainty or controversy giving rise to the proceeding." R.I.G.L. § 9-30-6.
In order for a court to maintain subject-matter jurisdiction over a motion for declaratory judgment pursuant to Rule 12(b)(6), there must be a justiciable controversy. "A declaratory judgment action may not be used for the determination of abstract questions or the rendering of advisory opinions." Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997). The issue before the court must be ripe for decision, and the court's decision must not be based on speculative facts. Sasso v. State, 686 A.2d 88, 91 (R.I. 1996). In other words, the court cannot be asked to render a decision based on a hypothetical situation. In the administrative rule-making context, plaintiffs must allege they have suffered or are threatened with some damage as a result of the enactment of certain rules.
A plaintiff seeking a declaratory judgment regarding the validity or applicability of any rule promulgated by an administrative agency must show that:
 "the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question." R.I.G.L. § 42-35-7.
 MOTION FOR DECLARATORY JUDGMENT
Plaintiffs first argue that the rule-changes adopted by the Division in June 2000 would negatively impact them because, among other things, the new Rules might cause the retirement of some older vehicles and may result in additional costs to taxicab owners or drivers. Plaintiffs further argue that the Rules were promulgated in an unconstitutional manner.
The plaintiffs in this case, however, fail to present any credible evidence or assert any way in which the Rules would interfere or impair their legal rights or privileges as required by the statute. The plaintiffs do not allege any imminent or actual damage to them as a result of the new Rules. For instance, the plaintiffs do not allege that any of their taxicabs are in such poor condition that they could not qualify for an exemption from the requirements of the new regulations. The plaintiffs do not present any evidence to show how much it would cost to bring a taxicab into such condition that it would qualify for an exemption. They have not shown the cost of replacing a taxicab with another that would not require an exemption. As a result, any damage or impairment to the plaintiffs is purely speculative. Plaintiffs ask this Court to render a decision based on hypothetical facts. This Court cannot render a judgment in plaintiffs' favor based on nothing more than unrealized fear on their behalf.
Plaintiffs' lack of credible evidence in support of their motion for a declaratory judgment prevents this Court from awarding the relief they seek. However, this Court will address the Constitutional questions raised by plaintiffs in order to determine whether or not declaratory judgment should be granted in favor of defendant.
Plaintiffs assert that they were denied due process when they were not invited to attend the working sessions between representatives of the Division and the Association. The meetings were held in order to work out any disputes among those parties regarding the proposed rule-changes.
Due process in the administrative context requires the opportunity to be heard "at a meaningful time and in a meaningful manner." Larue v. Registrar of Motor Vehicles, 568 A.2d 755, 758 (R.I. 1990) (quoting Millet v. Hoisting Engineers' License Division of the Dept. of Labor,377 A.2d 229, 235-36 (R.I. 1977)). The most important aspect of the "meaningful manner" requirement is that due process is satisfied if there is the opportunity to exercise a right and not the actual implementation of that right. Larue v. Registrar of Motor Vehicles, 568 A.2d at 758 (quoting Craig v. Pare, 497 A.2d 316, 320-321 (R.I. 1985) (emphasis added). The statute does not require that an interested party be included at every step of the rule-making process. To require this would potentially halt the administrative rule-making process.
Futhermore, there is a legal presumption favoring the action taken by administrators. A party challenging an action has the burden of producing evidence to overcome this presumption. Larue v. Registrar of Motor Vehicles, 568 A.2d at 758 (quoting Gorman v. University of Rhode Island,837 F.2d 7, 15 (1st Cir. 1988).
Plaintiffs were afforded a meaningful opportunity to be heard regarding the proposed rule-changes on June 29, 2000. At that time, plaintiffs did appear and give extensive testimony in objection to the new rules. The ultimate decision of the Division indicates that the Hearing Officer, Spirito, examined all the testimony before rendering a decision that specifically addressed every objection raised by plaintiffs. Thus, plaintiffs were afforded the statutorily mandated meaningful opportunity to voice their concerns regarding the proposed rule-changes. They were not denied due process as a result of their absence at the working sessions. Furthermore, plaintiffs present no evidence to overcome the presumption favoring actions taken by administrators.
Next, plaintiffs argue that they were denied due process because the Division performed two conflicting functions in the rule-making process. The alleged conflict results from the Division's Advocacy Section's attempts to settle any disputes with the Association regarding the proposed rules and the Division rendering the ultimate decision concerning the adoption of those rules. Plaintiffs argue that bias arose on the Division's part because it performed these two incompatible functions.
With regard to the internal dispute resolution tactics employed by an administrative agency, it is common for an agency to perform a variety of internal functions. For instance, a staff attorney may perform certain prosecutorial or investigative duties within an agency as long as that same attorney does not render the ultimate decision on the underlying controversy.
 "The mere existence of a combination of these functions does not establish the unconstitutionality of an agency's structure or operations. . . . The Supreme Court of the United States has ruled that in order to challenge an administrative process successfully on the grounds of a combination of incompatible functions, a respondent must show that the procedures `pose such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.'" La Petite Auberge, Inc. v. Rhode Island Commission For Human Rights, 419 A.2d 274, 284 (R.I. 1980) (quoting Withrow v. Larkin, 421 U.S. 35, 47 (1975)).
An actual risk of bias arises when the same individuals are involved in building an adversary case and deciding the issues of that case. Id. Actual risk of bias does not arise when the agency performs either one of these functions individually. Id. While the Court in La Petite Auberge discusses a prosecutorial or contested case scenario in its analysis of internal dispute resolution tactics of an administrative agency, it draws no general distinction between contested and uncontested proceedings in this context. Id.
Plaintiffs have proved neither damage to them as a result of the Division's rulemaking process, nor any resulting negative impact of the rule-changes upon them. In fact, the opposite is true. Plaintiffs were afforded the opportunity to participate in the rule-making process at the June 29, 2000 meeting. There is no evidence that indicates any alleged actual damage to the plaintiffs as a result of the rule-changes that qualifies as more than unrealized fear. The detailed decision issued by the Division further illustrates that Spirito carefully considered each of plaintiffs' objections and provided rationale for the adoption of each proposed rule-change. Clearly, no bias on the Division's part has been demonstrated by plaintiffs.
Further, plaintiffs have not shown that the same person or even the same department within the Division was performing two conflicting functions. The dispute resolution process was handled by one attorney who the Division deemed its Advocacy Section. The decision was rendered by a Division Hearing Officer after he considered the testimony before him. While some of that testimony was compiled by the attorney acting as the Division's Advocacy Section, that individual was not active in the decision-making process. Similarly, there is no evidence that indicates that Spirito played any part in the dispute resolution process. There was no overlap of the functions until it was necessary and appropriate at the decision-making stage. Subsequently, the two functions were performed by persons who acted independently of one another. Thus, there was no showing of bias on the Division's part which might render the new rules void.
Next, plaintiffs assert that they were denied due process because they did not receive thirty days notice of the June 29, 2000 meeting. Plaintiffs' argument falters here because the statute does not require thirty days notice for a hearing on a proposed action. R.I.G.L. §42-35-3(a)(1) requires that an agency provides at least thirty days notice to the public of any intended action. "Action" refers specifically to any agency adoption, amendment or repeal of an administrative rule. The notice must include the time, place and manner in which interested parties may be heard regarding the intended action.
There is an important distinction between notice of a hearing on an intended action and implementation of that action. The statute requires thirty days notice before an action may be implemented. However, there is no thirty day notice requirement for a hearing on the action. In fact, there is no hearing requirement at all. A hearing is only required when it is requested by "twenty-five (25) persons, or by a governmental subdivision or agency, or by an association having not less than twenty-five (25) members." R.I.G.L. § 42-35-3(a)(2). Thus, statutory notice of an intended action may issue, and an interested party may have less than thirty days to be heard or to otherwise in a meaningful manner present his/her view on the matter.
In this case, the first notice advising interested parties of the time, place and manner in which they would have the opportunity to present their views regarding the proposed rule-changes went out in mid-July 1999. It announced an August 16, 1999 hearing date. The second notice advising the same went out nearly a year later in June 2000. Both notices pertained to the promulgation of amended rules regulating the taxicab industry. The rules were not adopted until September 2000. Both notifications exceeded any possible thirty day notice requirement.
Plaintiffs further claim that due process was denied them because Desrosiers did not receive written notice of the June 2000 meeting as he claims to have requested of the Division. However, Desrosiers's presence at both meetings indicates that he had sufficient actual notice of the meetings even if he did not receive written notice. Desrosiers was not denied a meaningful opportunity to address the proposed rule-changes as a result of the Division's failure to provide him written notice of the hearing as he allegedly requested. Because Desrosiers appeared at the June 2000 meeting, it is clear that lack of personal, written notice to him did not deny plaintiffs due process.
Again, this Court notes that there was no statutory hearing requirement. Nevertheless, the Division decided to hold hearings in order to provide interested parties a meaningful opportunity to be heard regarding the proposed rule-changes.
Finally, plaintiffs argue that the adoption of the new rules was not valid because the Division failed to prove the need for the adoption of the new rules and further failed to address the impact that the new rules would have on the taxicab industry as a small business.
R.I.G.L. § 42-35-3(a)(3) requires an administrative agency to "demonstrate the need for the adoption, amendment or repeal of any rule in the record of the rulemaking proceeding." R.I.G.L. § 42-35-3(a)(3). Because a rule-making proceeding is not a contested case under that definition, an administrative agency is not required to hold a contested case hearing and subsequently prove the need for the proposed action through the presentation of evidence. Rather, the statute simply requires that the agency present some rationale for a proposed action. R.I.G.L. § 42-35-3(a)(3). The decision issued by the Division not only provides its rationale for adopting the new rules, but in doing so, it thoroughly addresses each objection raised by plaintiffs.
R.I.G.L. § 42-35-3(a)(4) requires an administrative agency to determine whether a proposed rule will impact a small business. However, the Rhode Island Administrative Procedures Act specifically excludes all "utilities" from the definition of small business. R.I.G.L. §42-35-3(i)(2)(G). R.I.G.L. § 39-1-2(20) defines "public utility" as "every company operating or doing business in intrastate commerce and in Rhode Island as a . . . common carrier." A taxicab operator satisfies the definition of "common carrier" as set forth in R.I.G.L. § 39-14-2
which provides that a common carrier is "any person who holds himself out to the general public as engaging in the transportation by motor vehicle of passengers for compensation in a taxicab. . . ." An administrative agency has no legal obligation to determine the impact of a proposed rule-change on a taxicab operator. In this case, the Division had no legal obligation to determine the impact of a proposed rule-change on a taxicab operator because taxicabs fall within the definition of "utility" under R.I.G.L. § 39-1-2(20).
After thorough review of the evidence and memoranda submitted by the parties,1 this Court denies plaintiffs' motion for declaratory judgment due to their lack of evidence in support of their motion. Furthermore, this Court finds that the Division promulgated its new Rules in a Constitutional manner. The Court grants declaratory judgment in favor of defendants.
Counsel for the prevailing parties shall submit an order and judgment consistent herewith to be settled upon notice to counsel for plaintiffs. 1 The Court calls to the attention of the reader that heretofore it granted plaintiffs' counsel an opportunity to file a memorandum by October 10, 2001. Thereafter, plaintiffs' counsel requested an additional extension in order to file said memorandum. Plaintiffs' counsel did not file his memorandum until November 12, 2001, more than a month after the date ordered by this Court. As a result, this Court did not take plaintiffs' memorandum under advisement in deciding the matter before the Court.